88 P.3d 664

**Christene E. OWENS, nka Christene Aaron Yazawa, Plaintiff–Appellee,**

v.

**Charles E. OWENS, Defendant–Appellant.**

**No. 24350.**

Intermediate Court of Appeals of Hawai'i.

March 25, 2004.

As Amended May 5, 2004.

Michael G.M. Ostendorp, on the briefs, Honolulu, for defendant-appellant.

J.E. Mayla Blakley, on the briefs, Honolulu, for plaintiff-appellee.

BURNS, C.J., WATANABE, and LIM, JJ.

Opinion of the Court by WATANABE, J.

In this appeal stemming from a divorce proceeding, Defendant–Appellant Charles E. Owens (Charles) challenges: (1) a post-decree order granting Plaintiff–Appellee Christene E. Owens, now known as Christene Aaron Yazawa (Christene), $24,697.84 in attorney's fees and costs pursuant to Hawai'i Family Court Rules (HFCR) Rule 68; and (2) an order denying Charles's motion for reconsideration of the foregoing order. We vacate both orders and remand for further proceedings consistent with this opinion.

## BACKGROUND

On October 5, 1995, a decree (Divorce Decree) was entered by the Family Court of the First Circuit (the family court) that, among other things: (1) dissolved the marriage of Charles and Christene; (2) awarded Christene legal and physical custody of the couple's son (Son); (3) awarded Charles "reasonable visitation" with Son and ordered Charles to pay $500.00 per month for the support, maintenance, and education of Son; (4) provided that the educational expenses of Son "shall be shared equally by the parties, subject to further order of the [family court]"; (5) required Charles and Christene to "maintain the medical and dental insurance he or she now has in effect through his or her employment or ... obtain comparable insurance"; (6) required any uncovered medical or dental expenses for Son to be paid equally by Charles and Christene; (7) ordered Charles to "obtain all military benefits" to which Son was entitled, "including a military [identification (ID)] card"; (8) required Charles to maintain life insurance for Son's benefit; and (9) divided and distributed the property and debts of Charles and Christene.

On May 26, 1999, a hearings officer with the Office of Child Support Hearings, Child Support Enforcement Agency (CSEA),[1] entered Administrative Findings and Order (Administrative Order), determining that Charles had overpaid Christene $3,236.00 in child support for Son. Christene failed to appear at the administrative hearing that led to the Administrative Order and did not subsequently appeal the Administrative Order. She does not contest that she owes Charles the overpaid amount.

During March 2000, Christene and Charles filed separate motions for post-decree relief in the family court divorce proceeding.

In her motion filed on March 9, 2000, Christene sought increased child support for Son, based on her belief that Charles "has received a promotion and/or pay increase." Christene also sought to offset her $3,236.00 indebtedness to Charles with various amounts she claimed Charles owed her due to his failure to comply with various portions of the Divorce Decree. Specifically, Christene claimed that Charles had failed to: (1) reimburse her for one-half of Son's educational expenses; (2) pay her for his share of Son's uncovered medical/dental expenses; (3) provide a military ID card for Son; (4) comply with provisions of the Divorce Decree concerning the sale of the marital residence, forcing her into bankruptcy; and (5) transfer to her title to a vehicle awarded to her.

In his motion for post-decree relief filed on March 29, 2000, Charles sought joint legal and physical custody of and a revised schedule for visitation with Son. Charles also requested that he and Christene be required to "share medical and school reports at appropriate times" and that the Divorce Decree be clarified to require better communication and cooperation between him and Christene relating to his visitation with Son. Additionally, Charles sought reimbursement by Christene of the $3,236.00 in child support overpayments awarded to him by the Administrative Order or, alternatively, a reduction of his monthly child support payments until his overpayments had been reimbursed in full. Finally, Charles requested payment of his attorney's fees and costs.

---

1. Pursuant to Hawaii Revised Statutes (HRS) chapter 576E–2 (1993 & Supp.2003),

the attorney general, through the [child support enforcement] agency and the office [of child support hearings established pursuant to HRS § 576E–10], shall have concurrent juris-

diction with the [family] court in all proceedings in which a support obligation is established, modified, or enforced, including but not limited to proceedings under chapters 571, 580, 584, and 576B.

On June 27, 2000, Charles filed his Settlement Conference Statement in anticipation of a settlement conference set before the family court on June 29, 2000. Regarding his own claims for relief, Charles stated, in relevant part:

[Charles] seeks joint legal and physical custody of [Son], applicable collateral relief, and alternatively, revision of the visitation schedule in this matter. Ideally [Charles] wants the parties to share physical custody of [Son] equally throughout the year on any schedule found by the [family court] to be in the best interests of [Son]. He proposes visitation as set forth in his motion (holidays alternating in even and odd years, the "non-custodial" parent having weekends and a midweek visitation; mother's day with [Christene]; father's day with [Charles]; the parties sharing one-half of [Son's] birthday, or the whole of the day on alternate years as agreed to by the parties[)]. [Charles] further seeks either re-imbursement [sic] of his overpayments for child support (including an examination of [Christene] and third parties as to assets and income, if necessary for a determination of this issue) or a reduction in the amount of monthly child support payments until his overpayments are reimbursed. He further seeks an order clarifying that [Christene] shall communicate directly with him and not use [Son] as a "go between". He lastly seeks payment of his attorney fees and costs.

Regarding Christene's claims for relief, Charles stated, in relevant part, as follows:

It must first be noted that the issues raised in [Christene's] motion, including her claims for off-sets resulting from [Charles's] alleged violations of the divorce decree prior to the May 26, 1999 [Administrative Order] are barred by *res judicata.*
. . .
. . . .

Regarding "damages" resulting from his failure to obtain military I.D. for [Son, Christene's] claims are speculative at best. She admits as much in her motion. . . .

In addition[, Charles] responds that holding a military identification card issued to [Son] would not allow [Christene] to shop at post exchanges for [Son] to say nothing of shopping on behalf of the rest of her family. Further, [Charles] is not aware of any "lessons and services" [Christene] provided to [Son] that could have been obtained if he had a military identification card.

Lastly, [Charles] notes that even if it can be found that he did not comply with the divorce decree as it relates to obtaining a military identification card for [Son], such failure was not willful or contumacious. [Charles] tried his best to obtain military identification for [Son]; he was informed that the army would not issue [Son] an identification card. This assertion is supported by the fact that [Christene] was similarly unsuccessful in her attempts to obtain military identification for [Son]. Only when [Charles] demanded documentation of the Army's refusal to provide [Son] with military identification, did they re-evaluate their refusal.

. . . .

As to [Christene's] claims that [Charles] violated the divorce decree regarding his inability to redeem the parties' real property and hold her harmless for any deficiency on its sale, the following facts are pertinent. [Christene's] counsel drafted the decree after [Christene] was made aware that [Charles] was unable to pay, not just the past due amounts on their mortgage, but current amounts as well. In fact she knew that the property was being foreclosed by [c]ourt action. While it is true that [Charles] accepted the decrees as written by [Christene's] counsel, his inability to redeem the property was beyond his control. [Charles] simply did not have the assets or income to do so. As a judicial proceeding pre-empted the parties' ability to sell their real property for a price equal to their equity, [Charles] did not willfully violate the terms of the decree. Furthermore it was legally impossible for [Charles] to fulfill the divorce decree's "hold harmless provision". Both [Christene] and [Charles] were makers of the note with which their property was purchased and both signed the mortgage giving the lender its security interest in

the property. The lender had a legal right to proceed against both the parties in this matter and [Charles] could do nothing to legally insulate [Christene] from the lender's suit or its judgment against them.

Further, if [Christene] suspected that [Charles] was for some irrational reason willing to allow the foreclosure action against their property proceed against his own financial interest, the time for [Christene] to act was during the foreclosure proceeding. In fact she did nothing. She did nothing for the entirely sensible reason that she knew [Charles] was financially unable to redeem the property. It is long since the time for [Christene] to act to enforce the decree regarding this property; she did not because she knew that it was impossible for [Charles] to comply with the decree.

There are also two causation problems in [Christene's] claim regarding [Charles's] failure to redeem the parties' property and hold her harmless for any deficiencies resulting from its sale. First is the fact that she has not alleged, nor has any evidence to prove, that the entry of judgment in the foreclosure action forced her to file for bankruptcy. She has neither alleged, not [sic] provided any evidence showing, that she had assets that were subject to execution as a result of the judgment in *Federal National Mortgage Association v. Charles Edward Owens et al.*, which were saved by the filing of the Petition in Bankruptcy. Further, [Christene] has not provided any evidence to support her claim of economic loss resulting from her bankruptcy.

. . . .

As to [Christene's] claim for off-set resulting from [Charles's] failure to transfer title to the Honda Civic to her, it is true that [Charles] did not do so. Nevertheless, [Christene] must show that this failure resulted in economic loss to her. She can not [sic] do so. [Christene] took this asset subject to the debt on the vehicle. She voluntarily surrendered her car to its lien holder approximately seven months after the filing of the decree in this matter. There was no threat by the lien holder to repossess the vehicle as a result of the

failure to transfer titled [sic] from the parties to [Christene] individually. [Christene] cannot explain how [Charles's] failure to transfer sole title in the automobile to her individually resulted in the need to surrender it.

Further, even if [Christene] could show that she surrendered her car involuntarily as a result of [Charles's] failure to transfer title to her solely, she still cannot claim an off-set against the money she owes [Charles]. Paragraph (4)(M) of the divorce decree in this matter provides that if either party refuses to co-operate in signing any documents as required under the decree, the other party may seek relief from the court pursuant to Rule 70(a) of the [HFCR] to obtain an order allowing the clerk of the court to execute the document in question. [Christene] never sought such relief.

. . . .

As to educational expenses allegedly not paid by [Charles], a review of [Christene's] exhibits in support thereof shows payments by [Christene] to the Y.M.C.A., American Lung Association, Hawaii Child Center for "gym" and other unintelligible expenses, unidentifiable payees for swimming lessons, Straub Childcare, the Young Buddhists Association for "asthma camp", the American Youth Soccer Association and Safeway Stores. They appear to also document payment for daycare services. A fair reading of the decree in this matter does not support the construction that [Charles] is liable for any expense claimed by [Christene]. The expenses claimed are not educational expenses for which [Charles] is liable under the decree [4].

As to uncovered medical expenses of [Son], [Charles] observes that he has at all times since the divorce maintained a medical insurance policy designed to covered [sic] medical expenses not covered by [Christene]. As far as he is aware, except as set forth below, the healthcare providers of [Son] are aware of both the existence of that policy and its number so that they may obtain payment for expenses not covered by [Christene's] policy.

Nonetheless, he admits that certain medications are no longer covered by his employer's medical coverage. Specifically [Charles] admits that the March 20, 2000 expense for the purchase of "Xopermex" from Long's Drug Store in the amount of $19.73 is a legitimate uncovered medical expense for which he is required to pay one-half [5].

[Charles's] counsel has reviewed the entirety of [Christene's] exhibits and remains concerned as to the legitimacy of the alleged charges.

....[2]

Counsel is instructed by his client to represent that [Charles] is unwilling to press his legitimate claims to the allegation that he has not provided his share of educational and uncovered medical expenses for [Son] to the extreme. He is distressed that he may not have paid legitimate expenses despite not being informed of them by [Christene]. [Charles] invites the [family court] to candidly express its views as to his responsibility for the legitimate educational and uncovered medical expenses incurred on behalf of [Son]; the [family court's] observations can only help the parties to resolve this dispute, even in the absence of documentation by [Christene].

[Christene] seeks modification of child support, essentially alleging that [Charles] has received a raise or promotion in his employment. As noted above, [Charles] has not received any pay raise....

[Christene] admits that [Charles] is not in arrearage in his child support payments.

As to the parties' claims for attorney fee and costs, [Charles] has made an offer of judgment to [Christene]. He believes the majority of [Christene's] claims are frivolous and, if this matter is not settled will assert his claim for attorney fees and costs incurred in these motions.

In sum, [Charles] does not believe that [Christene's] claims for off-set are meritorious. He does concede that he may be responsible for some of [Christene's] claims for [Son's] educational and uncovered medical expenses under the decree but notes that she did not raise these claims in the [CSEA] hearing and that they are largely barred by *res judicata;* further all of the claims represent expenses long since incurred and for which [Christene] neither consulted with him, may not have made claim through his insurer for their payment and never made demand for payment of the expenses until she filed her Motion for Post–Decree Relief. [Charles] believes that the claims in his Motion for Post–Decree Relief do have merit and seeks to settle this matter on terms proposed therein.

---

4 The exhibits do show payment by [Christene] of at least $1,194.43 to Sunrise Preschool from February 29, 1996 to July 17, 1996; no billings from Sunrise Preschool are included in the exhibits. [Charles] was unaware of these expenses until [Christene] provided him with her Exhibit List; [Christene] at no time consulted with [Charles] about sending [Son] to Sunrise Preschool nor transmitted any billings for preschool tuition to him. [Charles] remains unclear as to his responsibility for these expenses as the documentation provided by [Christene] do not place the expenses within the decree's requirement that he pay one-half of educational expenses.

5 It should be noted that this expense was incurred after the filing of [Christene's] Motion for Post–Decree Relief and that [Charles] was unaware of this expense until [Christene] submitted her Exhibit List to his counsel. [Christene] never sent him this bill or informed him by other means that this expense was incurred.

(Bolding in original; footnote 2 added.)

In her Settlement Conference Statement filed on July 20, 2000, Christene argued that no basis existed for a change in Son's custody. She pointed out that she is the only parent actively involved in the medical care

---

2. In the omitted section of his Settlement Conference Statement, Defendant–Appellant Charles E. Owens (Charles) expressed his concerns about numerous exhibits provided by Plaintiff–Appellee Christene E. Owens, now known as Christene Aaron Yazawa (Christene), in support of her claims for reimbursement for medical or dental expenses allegedly incurred on behalf of the couple's son (Son). These concerns centered on

whether the doctor or dentist in question had been aware of or made a claim against Charles's medical or dental insurance policy, the reasons that claims against Charles's medical or dental insurance policy had been rejected, and Christene's failure to notify Charles earlier of these claims so he could reimburse her for his share of the expenses.

of Son, who has "a hole in his heart[,]" is "medically vulnerable with serious heart and ongoing asthma allergy problems[,]" and is restricted in his activities. Additionally, she had sought the divorce because Charles had been physically and emotionally abusive to her and Son had witnessed such abuse. According to Christene, an "A" type visitation schedule, as proposed by Charles, was appropriate if Charles's time was specified and, "other than in rare, emergency situations, firmly set." However, Christene "strenuously" objected to Charles taking Son motorcycle riding. As to child support, Christene stated that "[Charles's] tax returns show his income has increased and therefore support should be recalculated accordingly[.]" Regarding Charles's claim for reimbursement of his child support overpayments, Christene conceded that she had not appealed and thus did not contest the applicability of the Administrative Order. However, she argued that reimbursing Charles for the overpayments

> was not fair in that (1) she believed [Charles] obtained the decision by showing CSEA various checks which, although marked child support, [Charles] had given her to satisfy his obligation for one-half of [Son's] pre-school tuition (and thus an obligation which she thought paid was still outstanding[)]; (2) [Charles] had never reimbursed [Christene] for his share of [Son's] uncovered health costs;[7] (3) [Charles] had never reimbursed [Christene] for other educational related costs; (4) [Charles] had never provided an ID card, as specifically ordered by the [Divorce] Decree, resulting in [Christene] having to pay for various classes which would, otherwise, have been available to [Son] without cost; and (5) [Charles] had failed to fulfill his obligations under the property terms of the Decree.[8] [Christene] believed the amount she owed [Charles] should be reduced by the amount [Charles] owed her. Thus, she filed her Motion for Post–Decree Relief on March 9, 2000.

---

[7] [Charles] complains that [Christene] did not tell him of these costs. Although [Christene] did initially inform him and ask for his contribution, she ceased over time due to his hostile responses and the fact that such requests yielded no payment anyway. Further [CHARLES] KNEW OF THESE COSTS. He received notices through his insurance which, as the supplemental plan, showed what was due after all monies paid by the plan were deducted. [Christene] notes that [Charles's] plan never covered all medication.

[8] He did not cooperate in removing his name from the vehicle which would, otherwise, have been awarded to [Christene]. As it was a credit union, without [Charles's] cooperation, the lender would not deal with [Christene] alone. He also remained in the marital residence without paying the mortgage, failing to put same on the market as agreed. He did not forward documents to [Christene] or provide the lender with her new address. The property was foreclosed and [Charles] did not indemnify her against the deficiency. Instead, he filed bankruptcy, forcing [Christene] to do the same.

Finally, Christene requested that any savings bonds in Charles's possession that were purchased for Son during their marriage be returned to her, or that some other arrangement be agreed upon which would assure that the bonds remain available for Son's use.

By a letter dated July 17, 2000, Christene's attorney mailed an HFCR Rule 68 settlement offer to Charles's attorney. The letter stated, in relevant part, as follows:

> [Christene] offers to resolve the pending litigation between the parties by entry of a judgment containing the following terms:
>
> 1. *CUSTODY.* [Christene] retains sole legal and physical custody.
>
> 2. *VISITATION.* [Charles] may have visitation on an "A" type schedule. Pick up and drop offs should be specified as to time and place so that they occur automatically; if any communication is necessary regarding visitation matters, it will be handled by the parents via e-mail. Both parents shall comply with any suggestions made by [Son's] therapist and shall otherwise cooperate with the therapist. [Charles] will not, without prior written permission, signed and notarized, from [Christene], take [Son] on a motorcycle or engage him in any physical (or other) type activity that might be dangerous given [Son's] medical condition. Neither parent will take [Son] off of Oahu without first providing the other party with an [sic] full itinerary, including airline reservations, and contact addresses, telephone numbers,

and, as appropriate, persons or hotel/motels.

3. *CHILD SUPPORT.* Child support will be derived through use of the Child Support Guidelines, using the parties' tax returns as well as paystubs [sic]. Please be aware that [Christene's] ability to work is limited by her medical condition. (We may already have given you a letter from her doctor to this effect.)

4. *MONIES OWED.* As to the monies which each party is claiming pursuant to this action, i.e., [Charles's] claim for overpaid child support and [Christene's] for his failure to follow various orders concerning the house and car and for non-payment of his share of educational and uncovered medical/dental expenses, these will be considered a wash. BOTH PARTIES WILL AGREE THAT FOR CLAIMS ARISING THROUGH THE DEADLINE FOR ACCEPTING THIS OFFER, NEITHER PARTY OWES ANYTHING TO THE OTHER. This does **NOT**, however, alter either party's obligation to contribute toward educational and medical/dental expenses which arise in the future, i.e., after the deadline for accepting this offer.

5. *ATTORNEY'S FEES AND COSTS.* Each party will pay his or her own attorney's fees and costs.

This offer will remain open for 10 days from the date upon which you receive this letter. If not accepted, the offer is withdrawn and is without prejudice to any position that [Christene] may take in the future.

(Bolded emphasis in original, internal brackets omitted.)

Charles did not accept Christene's offer of judgment, apparently because it lacked specificity as to the amount of child support Christene was claiming, failed to flesh out the details of the visitation schedule, included unacceptable restrictions on visitation, and did not address the communication and cooperation modifications to the Divorce Decree that he sought.

On July 20, 2000, following a settlement conference hearing, the family court, Judge Bode A. Uale (Judge Uale) presiding, entered Pretrial Order No. 1, which was apparently prepared by Christene's attorney. The order listed the following issues as being in dispute: legal custody, physical custody, Christene's income and expenses, Charles's income and expenses, child support, payment of child health care expenses, child educational expenses, and payment of legal fees. The order also stated that the issue of visitation had been "settled" and that all prior orders not specifically amended shall remain in effect. Pretrial Order No. 1[3] contained the following specific orders:

1. Visitation: Commencing immediately, [Charles] shall have visitation on an "A" type schedule including: (a) every other weekend from Friday after school until Sunday at 4:00 p.m. starting 7/28/00; (b) one weekday dinner visit each Wednesday from after school till return home at 7:00 p.m.; (c) one week of Christmas vacation each yr. w/week containing Xmas Eve & Day during odd-numbered years & New Year's Eve & Day during even-numbered years; (d) Thanksgiving & Easter during alternate years; (e) [Son's] birthday during alternate years; (f) *Summer Vacation:* 1/2 each yr. w/[Christene] to have alternate weekends & Wednesday visits during that period. [Son] to be returned to [Christene] no later than 1 week before school begins, (g) state and federal holidays not specifically mentioned in alternate years; (h) Father's Day each year[,] w/[Christene] to have Mother's Day. 2. [Charles] shall

---

3. It is unclear from the record whether Pretrial Order No. 1 was intended to amend or replace the visitation provisions of the Decree Granting Absolute Divorce and Awarding Child Custody (Divorce Decree) entered by the Family Court of the First Circuit (the family court) on October 5, 1995, or whether it was a temporary order pending trial on Christene's and Charles's motions for post-Divorce Decree relief. If the visitation provisions of Pretrial Order No. 1 were intended to replace the visitation provisions in the Divorce Decree, it would have been preferable for the order to specifically refer to the provisions of the Divorce Decree that were being amended, replaced, or deleted and indicate the effective date of the amendment, replacement, or deletion. For example, as to visitation, the order could have included language such as the following: "Paragraph 3(B) on pages 2 and 3 of the Decree Granting Absolute Divorce and Awarding Child Custody is amended, effective on the filing date of this order, to read as follows:...."

take [Son] to those events scheduled which occur during his time with [Son].

On July 24, 2000, prior to the expiration of Christene's HFCR Rule 68 offer of judgment, Christene filed a Motion for Summary Judgment as to Charles's "requests for change of physical and legal custody on the basis that [Charles] has not alleged a material change in circumstances regarding either issue." On July 28, 2000, Charles filed a Motion to Amend Pretrial Order No. 1, on grounds that

> at settlement conference[,] counsel for [Christene] stated that [Christene] conceded visitation as set forth in [Charles's] Motion for Post–Decree Relief. However, [Christene's] counsel submitted an order amending visitation that did not follow [Charles's] proposed visitation; in fact it lessens weekend visitation by three hours; it further contains no pick-up and drop[-]off times for holiday visitation, fails to include a number of state holidays and while directing [Charles] to pick-up [sic][Son] at his school however [Christene] has not contacted the school to authorize [Charles] to do so nor does the order require that [Christene] grant such authorization.

A hearing on both motions was held on August 2, 2000. At the hearing, Charles testified about an incident that had occurred two Saturdays prior to the hearing at an all-weekend Boy Scouts camp that he had arranged several weeks ahead of time to attend with Son. The arrangement, according to Charles, was that he would pick up Son on Friday from school or Son's house, go to the event, and leave Saturday night after their visitation time was over. Charles picked up Son on Friday after school, as planned, and nothing was said to him "about any changes or possible situations that could affect the weekend[.]" On Saturday, however, Christene, her current husband, and their family arrived at about noon and began to set up a tent on the opposite side of the camp. About two hours later, they crossed the camp grounds to the area next to Charles's tent and Christene showed Charles a piece of paper, apparently Pretrial Order No. 1, and said, "[T]his is a legal document, you have to

leave now or I'm gonna call the police[.]" When Charles responded, "[T]his is my visitation time, I have [Son] until seven," Christene told him, "[W]ell, it's legal and if you don't leave, I'm calling the police on you now." When Charles refused to leave, stating that he had not been informed that his visitation time with Son had changed, Christene's husband became upset and started yelling. An off-duty police officer, who was at the scouting event, witnessed the incident, and Charles told Christene and her family that they needed to move away. Meanwhile, Son had disappeared, prompting an extensive search for him by other scouts' parents. The scout master subsequently learned that Christene had sent Son away with her eighteen-year-old stepson. A little while later, the police arrived and began talking to Charles. Son then arrived and mentioned that Christene had put him in the car and made him leave, without allowing him to let Charles know that he was leaving. The police then informed Charles that Christene did have a document, that it was unclear, and because Charles's court documents indicated that he could be with Son until 7:00 p.m. and Charles and Son were in a public place, Charles did not have to leave. The police then left and Christene yelled at Son that he had to leave with her. Son started to cry because he did not want to leave.

Judge Uale denied Christene's motion for summary judgment, stating, in relevant part, that there was

> a genuine issue of material fact still outstanding and I cannot grant your motion as a matter of law because there is a big problem going on here and no judge can make a decision because of the back and forth, back and forth.

> Shoot, I've only been on this calendar, what, three weeks and you folks have been here almost every week that I've been here. There's a problem here. So, you folks agree on a [Custody Guardian Ad Litem (CGAL)], and you get a CGAL to come and evaluate these folks because I don't know what to believe. I don't know what to believe.

A written order denying Christene's Motion for Summary Judgment was filed on August 9, 2000.

By an order filed on August 10, 2000, Judge Uale appointed Mitchell Werth as CGAL to represent the interests of Son, conduct an investigation, and submit a report by September 7, 2000. The order also scheduled a hearing on the CGAL's report on September 14, 2000.

On August 11, 2000, Judge Uale entered Pretrial Order No. 2 [4] that: (1) continued trial until September 25, 2000; (2) appointed a CGAL to represent Son's interests; (3) provided for the method of selecting and compensating the CGAL; (4) set dates for the filing of and hearing on the CGAL's report; (5) required Christene to file by August 7, 2000 "a written physician's opinion regarding any danger posed by [Son's] heart condition to riding a motorcycle"; (6) ordered, effective immediately, a detailed revised schedule for Charles's visitation with Son [5]; and (7) provided that "[w]henever pos-

4. As with Pretrial Order No. 1, it is unclear from the record whether Pretrial Order No. 2 was intended to amend the Divorce Decree provisions regarding Charles's visitation rights or just serve as an interim order pending trial on the cross-motions for post-decree relief. *See* footnote 3.

5. Pretrial Order No. 2 provided that effective immediately, Charles shall have the following visitation schedule:

(1) [Charles] shall have visitation with [Son] from Friday, from after school until Sunday at 5:00 p.m. every other weekend commencing August 11, 2000.

(2) During the school year, [Charles] shall also have visitation with [Son] from after school on Wednesday each week until 7:00 p.m.

(3) [Christene] shall take all necessary steps to allow school authorities to release [Son] to [Charles] and his current wife for visitations.

(4) The parties shall share major holidays with [Son] as follows:
For all even-numbered years:

| HOLIDAY | [CHRISTENE] | [CHARLES] |
|---|---|---|
| New Years | | xx |

(From December 26 at 9:00 a.m. until 9:00 a.m. the day before the start of school)[.]

| | | |
|---|---|---|
| Martin Luther King Day | xx | |
| President's Day | | xx |
| Good Friday | xx | |
| Easter | | xx |
| Kamehameha Day | xx | |
| Memorial Day | | xx |
| Independence Day | xx | |
| Labor Day | | xx |
| Veteran's Day | xx | |
| Thanksgiving | | xx |

(Includes the Friday after the holiday, if that day is also a vacation day for [Son] ).

| | | |
|---|---|---|
| Christmas | | xx |

(Includes the day after school is finished until December 26 at 9:00 a.m.).

For all odd-numbered years:

| HOLIDAY | [CHRISTENE] | [CHARLES] |
|---|---|---|
| New Years Day | xx | |

(From December 26 at 9:00 a.m. until the start of school)[.]

sible the parent who has [Son] will take [Son] to his weekend activities that are important to [Son]."

Trial on the motions for post-decree relief filed by Christene and Charles was held before the family court, Judge Darryl Choy (Judge Choy) presiding, on October 24, 2000. At the conclusion of the trial, the family court announced its decision regarding the disputed issues, in relevant part, as follows:

There are numerous motions before this [c]ourt (indiscernible) motions to request to change sole legal custody of [Son] now in the hands of [Christene] to make it joint legal custody. Court believes there are insufficient evidence for the [c]ourt to grant this motion. Court believes the best interest of [Son] shall be served by confirming sole legal and physical custody with [Christene]. Motion is denied.

With regards to child support. Recalculation, [c]ourt finds passage of the many years is sufficient cause for the [c]ourt to order recalculation. . . .

|                        |    |    |
|------------------------|----|----|
| Martin Luther King Day |    | xx |
| President's Day        | xx |    |
| Good Friday            |    | xx |
| Easter                 | xx |    |
| Kamehameha Day         |    | xx |
| Memorial Day           | xx |    |
| Independence Day       |    | xx |
| Labor Day              | xx |    |
| Veteran's Day          |    | xx |
| Thanksgiving           | xx |    |

(Includes the Friday after the holiday, if that day is also a vacation day for [Son] ).

|           |    |    |
|-----------|----|----|
| Christmas |    | xx |

(Includes the day after school is finished until December 26 at 9:00 a.m.).

(5) Mother's/Father's Day and [Christene's]/ [Charles's] Birthday. [Son] shall visit with [Charles] on Father's Day and [Charles's] birthday each year until 7:00 p.m. if the next day is a school day and until 9:00 p.m. if the next day is not a school day (unless it falls during an extended visitation with [Charles]. [Son] shall spend Mother's Day and [Christene's] birthday each year with [Christene]; commencing at 9:00 a.m. if the day falls on a day after which [Son] has slept at [Charles's] residence during a weekend or extended visitation.

(6) [Son's] Birthday. [Charles and Christene] shall share 1/2 of the day on [Son's] birthday, or alternate yearly as mutually agreed by [Charles and Christene], if [Charles and Christene] cannot agree [Christene] shall spend [Son's] birthday with him (from 9:00 a.m. to 7:00 p.m. if it falls on [Charles's] weekend or other extended visitation) on even numbered years and [Charles] shall spend [Son's] birthday with him (from 9:00 a.m. until 7:00 p.m. if it falls on any day other than his weekend visitation or other extended visitation) on odd numbered years.

(7) Summer Vacation. The first three weeks of summer vacation, commencing on the last day of school with [Christene] on even numbered years and the second three weeks of summer with [Christene] on odd numbered years. The second three weeks of summer vacation with [Charles] on even numbered year[s] until 7:00 p.m. one week prior to the start of school [and] the first three weeks of summer vacation, commencing on the last day of school on odd numbered years. During the summer period when one parent has [Son] the other parent shall have alternate weekends from 5:00 p.m. Fridays until 5:00 p.m. Sundays and Wednesdays from 4:30 p.m. until 7:00 p.m.

(8) Spring Break. The first week of spring break with [Charles] on even numbered years and the second week of spring break with [Christene] on odd numbered years. The first week of spring break with [Christene] on even numbered years and the second week of spring break with [Charles] on even numbered years.

. . . .

The [c]ourt will order that that amount you've calculated, [Christene's] account[6] at thirty-five 0 two eighty-three; [Charles] at three zero two five.[7] The education expenses as pursuant to the exhibits, this is by decree. He owes one-half as he is owed in medical and dental expenses, and the [c]ourt will order those amounts be paid by him.

The [c]ourt is uncertain if a reservist is entitled to have his children covered, or rather entitled to military I.D. cards. What the [c]ourt will order, within two weeks of today's date, he will provide one of two things. Number one, a letter from his commanding officer indicating as reservist he cannot and is not entitled to receive identification card for any of his children; or number two, he shall provide a military identification card.

. . . .

... The issue of the home, [c]ourt has reviewed the decree. I do not find a formula where [Christene] was entitled to receive her ten thousand dollar retirement annuity (indiscernible) purchase of the home. There is a formula by which the home is to be sold. Unfortunately the formula was not followed. It appears also that [Charles] did not follow the formula; that he be responsible for current and past-due mortgage payments and maintenance/insurance costs.

It is[,] however, speculative for this [c]ourt to determine that there was sufficient funds of which [Christene] was to retrieve her five thousand dollar share of return in annuity. Court is uncertain whether or not the sale which was far below market value was because of the fact of the poor conditions of the market or because of the trashing of the house or whether or not this was due to him failing to maintain the cost.

But what is, however, clear though, the hold harmless clause, and in case of any deficiencies that [Charles] shall hold [Christene] harmless, and in that regard this [c]ourt will order that the cost of the bankruptcy is owed by [Charles] to [Christene] in the amount of eight hundred and seventy-five dollars.

Loss of the vehicle. Court notes that the signature date should have been October 25, 1995. [Christene] has turned in the car prior to that date. The other concern the [c]ourt has, it is speculative whether or not [Christene] would have qualified for the loan for the balance of the payments. In that regard, [c]ourt will deny any award of cost because of the failure to have the title transferred.

Court will deny recreational cost. Court will order, however, that [Charles] shall be entitled to Type-A visitation. There shall be alternating weekends. It shall commence Fridays after school. He shall return [Son] to [Christene] no later than 7 o'clock on Sundays. This will be alternating weeks. There shall be no credit for those weekends in which he has reserve duty.[8]

... [c]ourt's not giving [Charles] credit when [he misses] because of drill. It's a lost weekend. His weekend falls on drill, it's gone. Alright [sic], all the other aspects of Type-A can also go into effect. Parties may agree in witting [sic] to any changes to this [c]ourt's Type-A visitation.

Court will not place any restrictions on what [Charles] and [Son] may do during the periods of their visitation. Court would hope that [Charles] uses his best and most sound discretion. Court, howev-

---

6. It appears that "account" should be "amount."

7. It appears that the family court, in calculating child support, determined that Christene's monthly income was $3,502.83 and Charles's monthly income was $3,025.00. It also appears that the family court calculated Charles's monthly income based only on Charles's full-time job with the State of Hawai'i, Department of Public Safety and did not include Charles's monthly income as a sergeant in the Army Reserves.

8. Christene's attorney reminded the family court several times that the parties already had a very specific written order governing visitation. However, the court proceeded with its oral ruling as to visitation, which was far more general than Pretrial Order No. 2 that had been entered by Judge Bode Uale, supposedly upon agreement by the parties.

er, will prohibit any activities which are illegal in nature.

Court has given [Christene] legal physical custody. Court, however, will obligate [Christene] to prepare and to transmit to [Charles] within 24 hours all written reports. That is, all school reports whether by semester, or by quarter, or by year, any written reports from school that are adverse, all medical reports. These shall be, photocopies made, transmitted to [Charles] within 24 hours of receipt.

During the questioning by counsel for Charles and Christene that followed, the family court stated that it had "no problems" with a requirement that the parties provide itineraries when they traveled. The family court also ordered: (1) Christene to supply Charles with the list of all of Son's activities; (2) Christene to make a copy of Son's "boy scouts, soccer, or whatever" schedules and mail it to Charles; (3) Christene to not schedule more than two events during the time Son is scheduled to be with Charles; (4) Charles to pick up Son on Fridays at school, the soccer field, or at Christene's house; and (5) Charles to drop off Son at Christene's house on Sundays and to make sure that Son has completed all homework before doing so. The family court denied Christene's request for attorney's fees and refused to prohibit Charles from taking Son motorcycle riding. The family court also refused to "touch" the CSEA Administrative Order and suggested that the parties "sit down and work out some sort of setoff." Christene's attorney was directed to prepare an order.

On December 19, 2000, the family court entered its written order, drafted by Christene's attorney, regarding the motions for post-decree relief.[9] This order provided in relevant part, as follows: (1) Christene shall retain sole legal and physical custody of Son; (2) Charles shall have visitation with Son on alternate weekends from Friday at 2:00 p.m. until Sunday at 7:00 p.m. and at other times agreed to by the parties in writing; (3) each parent shall take Son to those activities in which he is involved and which fall during that parent's time with Son; however, Christene shall not schedule more than two activities for Son that must occur during Charles's weekend with Son; (4) Charles shall assure that all of Son's homework is completed prior to dropping Son off after his visits; (5) if either parent takes Son off island, that parent shall provide the other parent with a written itinerary, documenting specific flight and contact information; (6) Christene shall provide Charles with any school or medical reports within twenty-four hours after receiving the same and shall also provide any releases necessary to assure that Charles can talk with Son's doctors, school, and therapist; (7) the parties shall apprise each other of their home addresses and telephone numbers as long as Son remains a minor; (8) beginning December 1, 2000 and continuing until Son turns eighteen or graduates from, or discontinues, high school, whichever occurs last, Charles shall pay, through CSEA, $426.00 [10] per month for support, maintenance, and education of Son; however, if Son continues his education post-high school and remains a full-time student at an accredited college or university or a vocational or trade school, payments shall continue until Son is no longer a full-time student or turns twenty-three, whichever occurs first; (9) Charles shall pay Christene, within thirty days from the date of the order, the sum of $2,392.03, which represents (a) $775.00 for reimburse-

9. As with Pretrial Order Nos. 1 and 2, the order regarding Christene's and Charles's motions for post-decree relief did not specifically amend the Divorce Decree. It is unclear to us whether the provisions in the order were meant to replace, modify, or supplement the paragraphs in the Divorce Decree that addressed the same subjects. It is also unclear what the status of Pretrial Order Nos. 1 and 2 were after the entry of the family court's December 19, 2000 order. For example, in the December 19, 2000 order, there are only two sentences regarding Charles's visitation schedule. It is unclear what the status is of paragraph 3(B) of the Divorce Decree. It is also

unclear whether the detailed visitation schedule set out in Pretrial Order No. 2 remains in effect.

10. Pursuant to the Divorce Decree, Charles had been paying $500.00 per month in child support. The proposed written order regarding the cross-motions for post-decree relief that was drafted for the family court by Christene's attorney provided that Charles would pay $480.00 in monthly child support. The family court, Judge Darryl Choy presiding, crossed out the $480.00 amount and inserted and initialed in pen the figure "$426[.]"

ment of bankruptcy fees, (b) $1,477.27 for reimbursement of one-half of Son's preschool educational expenses, and (c) $139.76 for reimbursement of one-half of Son's uncovered medical/dental expenses; (10) Charles shall provide Christene, within ten days from the date of trial, "either a military I.D. card for [Son] or a letter from his military commanding officer verifying that [Son] is not eligible to receive same"[11]; and (11) each party will pay his or her attorney's fees and costs. The family court specifically "declined [Christene's] request for compensation as to car loss, real property down payment and [Son's] recreation costs." The family court also "declined to make any orders regarding [Charles's] claim for reimbursement of overpaid child support."

Neither side appealed. No settlement of the set-off claims had been made by April 26, 2001, when Christene filed a "Motion for [HFCR] Rule 68 Attorney's Fees and Costs and for Enforcement of Court's Order Requiring Repayment of Monies by [Charles] to [Christene], Together with Attorney's Fees and Costs Incurred in Said Enforcement" (Christene's HFCR Rule 68 Motion). On May 16, 2001, the family court held a hearing on the motion. Following the hearing, the court orally granted the motion:

The [c]ourt has heard the position of both of the parties. I have reviewed your submissions. I even have the transcript. And it was very clear to the [c]ourt though that there were portions that [Charles] won and portions that [Christene] won. It's this [c]ourt's duty to weigh those portions of the hearing itself to determine whether or not [HFCR] Rule 68's applicable in this case.

The [c]ourt has viewed the pretrial position of [Christene] and the pretrial position of [Charles], and in light of the [c]ourt's ruling the [c]ourt finds that the judgment as a whole was not patently more favorable to [Charles] and therefore this motion must and it shall be granted.

. . . .

The [c]ourt will also note that the decree order, although the had—the [c]ourt had ordered that payment for attorney's fees each party shall bear their own are all subject to [HFCR] Rule 68 order. The [c]ourt is not—it should not be aware of [HFCR] Rule 68 offers.

In fairness to the parties' request for reservation are subject to claims need not be made. I think it's still not fatal to [an HFCR] Rule 68 offer made at a subsequent time.

On May 18, 2001, Christene's attorney filed a Verified Statement of Counsel Re Attorney's Fees and Cost. She stated, in relevant part:

1. . . . The following statement is based upon records maintained by me in the regular course of my business and re [sic], to the best of my knowledge, true and correct.

3. [sic] My fees and costs from July 28, 2000, to date are as follows:

A. Attorney's fees: $22,802.50

B. Paralegal fees: $197.00

C. Cost: $709.67

D. Total Fees and Costs (including tax): **$24,697.84**

(Bolding in original.) No explanation of what services were provided for the attorney's and paralegal's fees and no breakdown of the costs incurred accompanied the statement.

On May 18, 2001, Judge Choy signed and entered an order granting Christene's HFCR Rule 68 Motion. The order provided that Charles pay Christene "forthwith the sum of $24,697.84 for her attorney's fees & costs pursuant to R. 68 and the sum of $2,492 as previously ordered by the court." The order also stated, "The court strongly suggested that the parties negotiate further concerning settlement."

On May 25, 2001, Charles filed a Motion for Reconsideration of Order Amending Judgment Awarding Attorney Fees. On June 15, 2001, Charles filed a Notice of Appeal

11. On November 2, 2000, Charles submitted documentation from the United States Department of the Army that Army Regulation 600–8–14 disallows issuance of a military identification card to Son, "child of Army Reserve Sergeant [Charles]" because issuance of a card to a dependent child is restricted "when the sponsor is not on active duty and when the child is not residing with the authorized sponsor."

from the order granting Christene's HFCR Rule 68 Motion. On July 10, 2001, Judge Choy entered an "Order Denying [Charles's] Motion for Reconsideration of Order Amending Judgment Awarding Attorney's Fees, Filed May 25, 2001[,]" and on July 16, 2001, Charles filed an Amended Notice of Appeal.

## ISSUES ON APPEAL

Charles argues that the family court erred by: (1) concluding that Christene's HFCR Rule 68 Motion for attorney's fees and costs was timely and not barred by *res judicata*, (2) concluding that the judgment finally obtained was "patently not more favorable as a whole" to Charles than Christene's HFCR Rule 68 offer, and (3) not addressing whether the award of attorney's fees and costs would be inequitable in accordance with the provisions of Hawai'i Revised Statutes (HRS) § 580–47 (Supp.2003).

## DISCUSSION

A. *Whether Christene's HFCR Rule 68 Motion for Attorney's Fees Was Timely or Barred by Res Judicata*

HFCR Rule 68 provides now, as it did when Christene's HFCR Rule 68 offer of judgment was made, as follows:

**Offer of settlement.**

At any time more than 20 days before any contested hearing held pursuant to HRS sections 571–11 to 14 (excluding law violations and criminal matters) is scheduled to begin, any party may serve upon the adverse party an offer to allow a judgment to be entered to the effect specified in the offer. Such offer may be made as to all or some of the issues, such as custody and visitation. Such offer shall not be filed with the court, unless it is accepted. If within 10 days after service of the offer the adverse party serves written notice that the offer is accepted, any party may then file the offer and notice of acceptance together with proof of service thereof and thereupon the court shall treat those issues

as uncontested. *An offer not accepted shall be deemed withdrawn and evidence thereof is not admissible, except in a proceeding to determine costs and attorney's fees.* If the judgment in its entirety finally obtained by the offeree is patently not more favorable than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47 or other applicable statutes, as amended.

HFCR Rule 68 (emphasis added).

Charles maintains that Christene's HFCR Rule 68 Motion should be considered an HFCR Rule 59 motion to amend the December 19, 2000 order because in that order, the family court specifically declined to award attorney's fees to either party. According to Charles, Christene's HFCR Rule 68 Motion must be denied because it was not filed until April 26, 2001 and HFCR Rule 59 [12] requires that motions to amend a judgment be filed no later than ten days after entry of that judgment. Charles further claims that Christene's HFCR Rule 68 Motion for attorney's fees is barred by *res judicata* principles because the December 19, 2000 order specifically provided that "[e]ach party will pay his or her attorney's fees and costs" and did not expressly reserve the question of HFCR Rule 68 attorney's fees for later determination. We disagree.

Pursuant to HRS § 580–47, a family court hearing any motion for orders ... revising an order for the custody, support, maintenance, and education of the children of the parties ... may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the econom-

---

12. Hawai'i Family Court Rules (HFCR) Rule 59(e) provides, in relevant part:

(e) *Motion to reconsider, alter or amend a judgment or order.* Except as otherwise pro-

vided by HRS section 571–54, a motion to reconsider, alter or amend the judgment or order shall be filed not later than 10 days after entry of the judgment or order.

ic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

HRS § 580–47(f). An HRS § 580–47 determination that both parties should bear their own attorney's fees on a particular motion is not the same as an award pursuant to HFCR Rule 68 based on a rejected settlement offer.

■ "The primary purpose of HFCR Rule 68 is to encourage settlements more than [20] days before a contested matrimonial trial or a contested hearing for an order is scheduled to begin." *Criss v. Kunisada*, 89 Hawai'i 17, 22, 968 P.2d 184, 189 (App.1998) (internal brackets and quotation marks omitted; the number "20" substituted for "10" as the number of days prior to trial or hearing an offer of judgment must be made under current HFCR Rule 68). In contrast, the purpose of HRS § 580–47 is to allow the court to shift the burden of paying for the costs of litigation from one party to another when justice so requires. The award of attorney's fees under HRS § 580–47 is discretionary, and the family court may grant attorney's fees thereunder when the family court feels it is "just and equitable" to do so. HFCR Rule 68 awards, in contrast, are mandatory if the family court finds that the judgment finally obtained by the offeree is "patently not more favorable" than the movant's offer to settle (unless, of course, the court specifically finds that awarding fees would be "inequitable" under the circumstances).

Furthermore, as the family court correctly noted in its oral ruling, the December 19, 2000 order could not have disposed of the HFCR Rule 68 issue because courts are not allowed to examine the contents of settlement offers until judgment has been entered and an HFCR Rule 68 motion filed.[13] HFCR Rule 68 motions are properly brought

only after a judgment has been "finally obtained."[14] Otherwise, there would be no way to compare the proposed offer with the final judgment.

■ *Res judicata* bars relitigation of an issue where:

1) the issue decided in the prior adjudication is identical with the one presented in the action in question; 2) there was a final judgment on the merits; and 3) the party against whom res judicata is asserted was a party or in privity with a party to the prior adjudication.

*Bush v. Watson*, 81 Hawai'i 474, 480, 918 P.2d 1130, 1136 (1996) (internal brackets and quotation marks omitted).

■ Since the December 19, 2000 order could not have determined the HFCR Rule 68 issue on the merits, *res judicata* cannot apply. Likewise, there is no reason to consider Christene's HFCR Rule 68 Motion to be a Rule 59 attempt to amend the December 19, 2000 order.

The family court thus did not err by hearing and deciding Christene's HFCR Rule 68 Motion for attorney's fees and costs pursuant to HFCR Rule 68.

B. *Whether the Family Court Erred in Concluding That Christene Was Entitled to Attorney's Fees and Costs Pursuant to HFCR Rule 68*

■ In *Criss*, this court stated:

In order for attorney's fees and costs to be awarded under HFCR Rule 68, certain requirements must be met. First, the offer of settlement must be made at any time more than twenty days before a contested matrimonial trial or a contested hearing for an order is scheduled to begin. Second, the offeror must serve upon the ad-

---

**13.** The relevant part of HFCR Rule 68 states:
An offer not accepted shall be deemed withdrawn and *evidence thereof is not admissible, except in a proceeding to determine costs and attorney's fees.*
HFCR Rule 68 (emphasis added).

**14.** The relevant part of HFCR Rule 68 states:
If the judgment in its entirety *finally obtained* by the offeree is patently not more favorable

than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after the making of the offer, unless the court shall specifically determine that such would be inequitable in accordance with the provisions of HRS section 580–47 or other applicable statutes, as amended.
HFCR Rule 68 (emphasis added).

verse party an offer to allow a decree or order to be entered to the effect specified in the offer. Third, the decree or order finally obtained by the offeree must be patently not more favorable as a whole than the offer. Finally, if all the preceding requirements of HFCR Rule 68 have been met, the court shall make an award of reasonable attorney's fees and costs to the offeror unless it specifically determines that such an award would be inequitable, considering the provisions of HRS § 580–47, as amended.

*Criss*, 89 Hawai'i at 23, 968 P.2d at 190. We examine the propriety of the award to Christene of attorney's fees and costs pursuant to HFCR Rule 68 according to the foregoing standards.

### 1.

In this case, Christene's HFCR Rule 68 offer was made on July 17, 2000, twenty days before the originally scheduled August 7, 2000 trial on the parties' cross-motions for post-decree relief. Christene thus satisfied the twenty-day requirement.

### 2.

■ An offer of settlement pursuant to HFCR Rule 68 "may be made concerning any item as to which 'a decree or order' may be entered, and is not required to encompass all issues in a divorce proceeding." *Id.* at 18, 968 P.2d at 185. Thus, an offer of judgment as to the sole issue of custody is permissible under HFCR Rule 68 because "permitting an offeror to recover attorney's fees and costs with respect to an offer that encompasses less than all the contested issues" facilitates settlements, "eliminating unnecessary expenditures of time, energy, and resources." *Id.* at 25, 968 P.2d at 192. An HFCR Rule 68 offer, like a Hawai'i Rules of Civil Procedure Rule 68 offer, "must be such that a decree or order in the words of the offer will fully and completely decide the claim or claims toward which the offer is directed." *Id.* at 23, 968 P.2d at 190 (internal brackets and quotation marks omitted). In this regard, "where an offer specifies only 'reasonable visitation' to the noncustodial parent, it is open to interpretation by each of the parties as to what

they believe 'reasonable visitation' means, if there is no detailed explanation of what 'reasonable visitation' is actually intended by the party offering such." *Id.* at 24, 968 P.2d at 191 (ellipsis, internal brackets, and some internal quotation marks omitted).

In this case, Christene's HFCR Rule 68 offer of judgment proposed to allow entry of a judgment containing terms as to custody, visitation, amount of child support, monies owed to each other, and attorney's fees and costs. *See supra.* Charles did not respond to any part of the offer, claiming that several of the terms (child support, monies owed, and visitation restrictions) lacked specificity.

■ In light of *Criss*, however, we conclude that Christene's offer as to custody, i.e., that she retain sole legal and physical custody of Son, was sufficiently specific to "fully and completely decide the claim or claims toward which the offer [was] directed." *Id.* at 23, 968 P.2d at 190. Similarly, the following parts of Christene's offer were sufficiently detailed to allow a decree or order in the words of the offer to fully and completely decide the claim or claims toward which the offer was directed that: (1) each party shall bear his or her own attorney's fees and costs, and (2) Charles's claim for overpaid child support pursuant to CSEA's Administrative Order would be considered completely satisfied by Christene's claim for reimbursement of expenses that Charles failed to pay under the Divorce Decree.

■ On the other hand, Christene's offer regarding child support was not sufficiently specific to allow an order to be entered that fully and completely decided these claims. Christene offered to have child support "derived through the use of the Child Support Guidelines, using the parties' tax returns as well as paystub [sic]." However, it appears from the record that a major dispute between the parties concerned the fact that due to a lump sum payment for back wages, Charles's gross yearly earnings for his job with the State of Hawai'i, as reflected on his 1999 Wage and Tax Statement, when divided by twelve to calculate his monthly gross earnings, was much higher than his current gross monthly earnings, as reflected by Charles's current pay stubs. Additionally,

Christene indicated in her offer that her ability to work was limited by her medical condition, thus suggesting that her tax returns and past pay stubs were not an accurate indicator of her monthly pay for child support calculation purposes.

As to Christene's visitation offer, the record indicates that before the expiration of the ten-day acceptance period specified in the offer, the parties attended a settlement conference before Judge Uale which resulted in settlement of the visitation issue, as memorialized in Pretrial Order No. 1 and clarified in Pretrial Order No. 2. However, Judge Choy seems to have revisited the issue at the trial on the parties' post-decree motions, and his December 19, 2000 order sets out a visitation schedule that is very short on detail.

■ In *Nakasone v. Nakasone*, 102 Hawai'i 177, 73 P.3d 715 (2003), the Hawai'i Supreme Court held that "matters in an offer of settlement made pursuant to [HFCR] Rule 68, which are initially rejected but later settled by agreement before trial, are not subject to an award of attorney's fees and costs under [HFCR] Rule 68." *Id.* at 178, 73 P.3d at 716. The supreme court explained that the purpose of HFCR Rule 68 is to encourage settlements prior to a contested matrimonial trial or hearing. When parties enter into a stipulation of partial settlement, they resolve "certain items out-of-court[,]" thus removing such items from the operative scope of [HFCR] Rule 68 and rendering such matters "uncontested." *Id.* at 181, 73 P.3d at 719. The supreme court further stated, in relevant part:

> Because uncontested, the provisions of [HFCR] Rule 68 with respect to the "not more favorable" decree provision of the Rule would be inapplicable, along with the concomitant judicial authority to assess attorney's fees. Similarly, if a stipulation of settlement as to such items resulted not from [HFCR] Rule 68 exchanges but from an agreement outside the Rule, then the attorney's fees provision of [HFCR] Rule 68 likewise would be inoperative.
>
> . . . .
>
> Inasmuch as the award of attorney's fees hinges on a comparison of the offer

with the decree or order finally obtained by the offeree, the Rule does not contemplate an award of attorney's fees if there is no decree or order finally obtained by the offeree with respect to a subject contained within the offer. Where the issue that had been the subject matter of a[n HFCR] Rule 68 offer has been settled pre-trial by the parties themselves, it is removed from dispute in the proceedings and is thus no longer the subject of an order "finally obtained" by the offeree.

*Id.* at 181–82, 73 P.3d at 719–20.

Because of the confusing state of the record as to the visitation issue, the family court is directed on remand to determine if the visitation issue was settled by the parties, thus precluding Christene from receiving attorney's fees and costs pursuant to HFCR Rule 68 as to this issue.

### 3.

The family court specifically found that its December 19, 2000 order "was not patently more favorable to [Charles.]" In so finding, the family court orally observed, "[I]t was very clear to the [c]ourt . . . that there were portions that [Charles] won and portions that [Christene] won." It appears, therefore, that the family court decided Christene's HFCR Rule 68 motion for attorney's fees and costs by evaluating who was the prevailing party at trial on all the issues raised by Christene's offer.

■ In *Criss*, this court held that an offer of settlement pursuant to HFCR Rule 68

> may be made concerning any item as to which "a decree or order" may be entered, and is not required to encompass all issues in a divorce proceeding. This interpretation comports with the express language in HFCR Rule 68 and facilitates the settlement of disputed issues. Thus, . . . the HFCR Rule 68 offer . . . that Wife shall be awarded custody of the minor child of the parties, subject to rights of reasonable visitation of [Husband], must be compared as a whole to those terms of the divorce decree to which the offer was directed, i.e., custody of the minor child.

*Criss*, 89 Hawai'i at 18, 968 P.2d at 185. In other words, in determining entitlement to HFCR Rule 68 attorney's fees and costs, the relevant question is whether the final judgment resolving a disputed issue is "not patently more favorable" than the HFCR Rule 68 offer of judgment as to that issue.

On remand, the family court is directed to determine Christene's HFCR Rule 68 Motion issue by issue, as required by *Criss*. To the extent that any issue that was the subject of Christene's HFCR Rule 68 Motion may have been resolved by stipulation or agreement by the parties, the family court is precluded, under *Nakasone*, from granting attorney's fees and costs to Christene as to that issue.

### 4.

In *Criss*, this court stated that if the first three requirements for award of HFCR Rule 68 attorney's fees and costs have been met, "the court shall make an award of reasonable attorney's fees and costs to the offeror unless it specifically determines that such an award would be inequitable, considering the provisions of HRS § 580–47, as amended." [15] *Criss*, 89 Hawai'i at 23, 968 P.2d at 190.

In *Gardner v. Gardner*, 8 Haw.App. 461, 810 P.2d 239 (1991), one of the parties filed a motion for an HFCR Rule 68 order awarding attorney's fees and costs. The family court denied the motion, "stat[ing] merely that based upon the arguments of counsel, the file herein, and the memorandums filed by the parties, the [c]ourt hereby denies said motion." *Id.* at 477–78, 810 P.2d at 248 (internal brackets and quotation marks omitted). This court vacated that portion of the family court's decision and remanded the case because

[n]otwithstanding the specific language of HFCR Rule 68, the family court did not

decide (1) whether the November 3, 1989 Divorce Decree was patently not more favorable as a whole to Wife than Husband's March 20, 1989 Offer of Settlement; and (2) whether an order requiring Wife to pay Husband's attorney's fees and costs would be inequitable in accordance with the provisions of HRS § 580–47. The family court cannot decide Husband's December 15, 1989 motion until it expressly decides those questions.

*Id.* at 478, 810 P.2d at 248.

In the more recent HFCR Rule 68 case of *Criss*, the family court found that its judgment was more favorable to the HFCR Rule 68 offeree than the settlement offer was and, thus, denied the motion for attorney's fees. This court reversed the family court on that issue and stated:

Once it is determined that the award obtained by the offeree is patently not more favorable as a whole than the offer, the court must determine whether it would be inequitable to award attorney's fees and costs, applying the standards set forth in HRS § 580–47(f). Because the court denied Wife attorney's fees and costs under HFCR Rule 68, it did not consider whether such an award would violate HRS § 580–47(e) [sic]. Since we remand for the court's determination of Wife's attorney's fees and costs under HFCR Rule 68, we instruct the court to apply the standards in HRS § 580–47(f) to any award of attorney's fees and costs. As this court stated in *Wood*, HFCR Rule 68's reference to the equitability provisions in HRS § 580–47 gives the family court the discretion, in the light of the considerations stated in HRS § 580–47, to award only such attorney's fees and costs "as shall appear just and equitable." *Wood*, 82 Hawai'i at 542–43, 923 P.2d at 959–60.

15. HRS § 580–47 (Supp.2003) states, in relevant part:

(f) Attorney's fees and costs. The *court* hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, *may make such orders requiring either*

*party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.*

HRS § 580–47(f) (emphases added).

*Criss,* 89 Hawai'i at 25–26, 968 P.2d at 192–93 (footnote and internal brackets omitted).

In this case, the family court did not explicitly or implicitly determine whether awarding attorney's fees and costs to Christene "would be inequitable in accordance with the provisions of HRS § 580–47." It simply stated in its oral ruling:

> The [c]ourt has viewed the pretrial position of [Christene] and the pretrial position of [Charles], and in light of the [c]ourt's ruling the [c]ourt finds that the judgment as a whole was not patently more favorable to [Charles] and therefore this motion must and it shall be granted.

On remand, it must do so. *See Nakasone,* 102 Hawai'i at 182, 73 P.3d at 720.

### C. *The Propriety of the Attorney's Fees and Costs Claimed by Christene*

██ As noted earlier, Christene's attorney submitted a verified statement of the amount of attorney's fees and costs incurred after July 28, 2000 that was not supported by any time sheets, invoices, or other documentation. Assuming that the family court determines that Christene is entitled to be awarded attorney's fees and costs, it would be difficult to evaluate the reasonableness of Christene's request absent such documentation. On remand, such documentation shall be provided to the family court.

### CONCLUSION

In light of the foregoing discussion, we vacate the: (1) "Order Granting Motion for [HFCR] Rule 68 Attorney's Fees and Costs and for Enforcement of Court's Order" entered by the family court on May 18, 2001; and (2) "Order Denying [Charles's] Motion for Reconsideration of Order Amending Judgment Awarding Attorney's Fees, Filed May 25, 2001" entered on July 10, 2001. We remand for further proceedings consistent with this opinion.