137 P.3d 365

**Susan UNDERWOOD, Plaintiff–Appellant,**

v.

**Stephen COLLEY, Defendant–Appellee.**

No. 26843.

Intermediate Court of Appeals of Hawai'i.

May 17, 2006.

Lloyd Van De Car, on the briefs, for Plaintiff-Appellant.

Valta A. Cook, Hilo, and Kris A. LaGuire, on the briefs, for Defendant-Appellee.

BURNS, C.J., NAKAMURA and FUJISE, JJ.

Opinion of the Court by BURNS, C.J.

Plaintiff-Appellant Susan Underwood (Underwood) appeals from the August 27, 2004 Amended Order Amending the Findings of Fact, Conclusions of Law and Order (August 27, 2004 FsOF, CsOL and Order) entered in the Family Court of the Third Circuit.[1] We vacate and remand for compliance with the applicable statutes.

## ISSUE AND DECISION

While the husband is living in Vermont and the wife is living in New Mexico, a divorce decree is entered in New Mexico ordering the husband to pay a specified amount of spousal support to the wife until the husband's death or the wife's remarriage or death. Under the Uniform Interstate Family Support Act (UIFSA), after the husband moves to Hawai'i and the wife moves to Washington, and, in Hawai'i, (a) the wife registers New Mexico's August 9, 2001 Final Decree; (b) the wife moves for collection of an alleged spousal support arrearage and for payment of present and future spousal support; and (c) the husband responds with a motion for a reduction of past, present, and future spousal support, does Hawai'i have subject matter jurisdiction to modify the spousal support order contained in the New Mexico divorce decree? We conclude that the answer is no. This conclusion is in accord with the holding in *Hook v. Hook*, 170 N.C.App. 138, 611 S.E.2d 869 (N.C.App. 2005).

1. Judge Terence T. Yoshioka presided.

## BACKGROUND

On August 9, 2001, in case no. DM 99-02374, a New Mexico court entered a Final Decree divorcing Underwood and Defendant-Appellee Stephen Colley (Colley). This Final Decree approved and incorporated a prior Stipulation and Marital Settlement Agreement between Underwood and Colley. At that time, Colley was a resident of Vermont and his annual income was $124,500. This Final Decree stated that "[Underwood] is in need of lifetime alimony as she is physically disabled" and ordered, in relevant part, as follows:

9. **SPOUSAL SUPPORT.** [Colley] will pay [Underwood] alimony in the amount of $3,283 per month beginning August 1, 2001, by direct deposit into [Underwood's] bank account provided the home sale closes on or before July 31, 2001. If [Colley] is required to make a house payment for August 2001 due to the failure in the sale of the home, [Colley] shall pay to [Underwood] support in the amount of $1,600 for August 2001, with Alimony beginning on September 1, 2001. [Colley] will cooperate in allowing [Underwood] to obtain a life insurance policy in an amount up to $500,000 on his life to secure the alimony award. The alimony will increase or decrease each year by a cost of living increase equal to the CPI index percentage for the previous year. The change in support will occur on August 1 of each year beginning August 1, 2002.

[Colley] is also required to pay as alimony 35% of all gross salary increases, bonuses and incentive payments over and above $125,000 per year up to a cap of $150,000 per year. The payment shall be made within thirty (30) days of receipt of the bonus or incentive payment. Alimony shall increase in the month following any salary increase. Expense reimbursements and lump sum payments for expenses shall not be included in any income calculations.

[Colley] shall also be able to decrease his alimony payments by 35% of any decrease in salary from $125,000 to $100,000. The formula shall be current alimony minus 35% of any decrease in salary.

[Colley's] monthly alimony payment will also be decreased by 50% of any earned income [Underwood] receives and by 50% of any social security benefits [Underwood] receives.

. . . .

[Colley's] alimony obligations shall cease upon [Underwood's] remarriage or death or [Colley's] death.

On August 5, 2002, Colley's employment in Vermont was terminated. In Vermont, Underwood filed an action to collect any unpaid spousal support. On August 6, 2002, Colley responded with a motion for a reduction of his spousal support obligation. Hawai'i's August 27, 2004 FsOF state, in relevant part:

7. During a hearing held on October 7, 2002, before the Honorable Linda Levitt, Judge of the C[h]ittenden Family Court of the State of Vermont, [Colley] appeared personally and [Underwood] appeared by way of telephone. At the hearing, [counsel for Underwood] placed on the record what the parties had agreed to with respect to the division of [Colley's] current unemployment income and of his future earnings. The Agreement with respect to [Colley's] then unemployment compensation of $1,599.00 was for payment of 20% thereof, or $320.00 per month to [Underwood]. However, the parties were unable to reach a meeting of the minds with respect to the division of future amounts received by [Colley]. Judge Levitt expressed her approval of the $320.00 per month support.

8. Subsequent hearings held on November 5, 2002, and January 21, 2003, . . . failed to produce any agreement with respect to the amount of [Colley's] future support obligations. However, [Colley] paid to [Underwood] 20% of his unemployment compensation for the period from his termination of employment at IBM to the date when he started employment in the State of Hawai'i.

9. At a hearing before Judge Levitt on March 25, 2003, . . . [Colley] informed the Court that he had found employment, which was to start on April 1, 2003, in

Hawai'i with a starting salary of $80,000.00.[2] Subsequently, at a hearing held on May 29, 2003, the Vermont Court declined to exercise jurisdiction over the case because both parties were, at that time, residents of different states, and left unresolved the issue of [Colley's] support obligations based upon his then income of $80,000.00 per year. Nevertheless, [Colley] commenced payment of support in the amount of $1,700.00 per month to [Underwood] commencing May 2003, based upon negotiations with [counsel for Underwood].

10. [Colley] reasonably believed, based upon the representations and conduct of [Underwood's] counsel at the October 7, 2002, hearing, as well as the representation of the Vermont court, that the parties had agreed to set [Underwood's] spousal support at $320.00 per month for the period when [Colley] was receiving $1,599.00 per month in unemployment compensation. [Underwood] knew, or should have known, that [Colley] was relying upon those representations. [Underwood] accepted the benefits of the parties' understanding and caused [Colley] not to take any further steps to formally memorialize their agreement.

11. With respect to the support due [Underwood] for periods other than when [Colley] was collecting unemployment compensation, the evidence presented does not establish any meeting of the minds of the parties as to what [Underwood's] support would be. Although [Colley] started payment of $1,700.00 per month to [Underwood] when he commenced his employment in Hawai'i, the record is unclear as to whether this amount was accepted by [Underwood] as the amount due her for her support.

12. Since the divorce, [Colley] has remarried, and he and his wife are the parents of a son with special needs. In addition, his present wife has two other children by a previous relationship for whom she receives no child support. Due to the special needs of [Colley's] son,

**2.** At the time, Defendant–Appellee Stephen Colley was employed in Hilo, Hawai'i as an engineer at the Subaru Telescope.

[Colley's] wife cannot work and must tend to her son on a full-time basis.

(Footnote added.)

In a September 29, 2003 affidavit, Underwood stated that she was then a resident of Bothell, Washington.

In Hawai'i, on October 16, 2003, Underwood commenced this case by filing a petition to register the New Mexico August 9, 2001 Final Decree. On October 30, 2003, Underwood moved for collection of an alleged spousal support arrearage from May 2002 through September 2003 and for payment of spousal support coming due on and after October 1, 2003. On November 20, 2003, Colley responded with a Motion for Modification of Spousal Support.

On May 21, 2004, the court entered Findings of Fact, Conclusions of Law and Order. On May 28, 2004, Underwood filed a motion for reconsideration. On June 1, 2004, Colley filed a motion for reconsideration. On August 24, 2004, the court entered the Order Amending the Findings of Fact, Conclusions of Law and Order. On August 27, 2004, the court entered the Amended Order Amending the Findings of Fact, Conclusions of Law and Order which states, in relevant part:

1. [Underwood's] spousal support shall be reduced to $2,167.00, nunc pro tunc to November 20, 2003.

2. [Colley] shall commence payment of $2,167 in spousal support to [Underwood] as of June 1, 2004.

3. The spousal support arrearage of $3,727.13 owing to [Underwood] shall be paid by [Colley] withing [sic] sixty (60) days from the date hereof.

. . . .

5. [Underwood] is estopped from pursuing support of $3,283.00 from [Colley] for the period August 1, 2002, through March 31, 2003.

6. The parties shall bear their respective attorney's fees and costs.

On September 23, 2004, Underwood filed a notice of appeal. This appeal was assigned to this court on May 16, 2005.

## DISCUSSION

In the Reply Brief, counsel for Underwood states, in relevant part:

[Underwood] urged in her Opening Brief that the language of the New Mexico order limits the power of the Hawaii Family Court to modify [Colley's] support obligation, so that the only modifications permitted are those that exist within the parameters of that original order. . . .

In 1997 the Hawaii legislature adopted the 1996 version of the Uniform Interstate Family Support Act. New Mexico and Vermont also adopted that version of the UIFSA in 1997. There is a later version of this uniform act, but all of the three states involved in this case maintain the 1996 version.

The UIFSA requires in sections 205(f) and 206(c) that the tribunal issuing a spousal support order retains continuing exclusive jurisdiction over the order throughout the existence of the support obligation and that a spousal support order may not be modified by a tribunal of another state. . . .

When read together with the official commentary, the meaning of H.R.S. [Hawaii Revised Statutes (HRS)] §§ 576B–205(f) and 576B–206(c) permit no other interpretation than the conclusion that Hawaii Family Court lacked jurisdiction to modify [Colley's] New Mexico support obligation:

. . . .

Because New Mexico, Vermont, and Hawaii had all adopted the UIFSA when the Final Decree was issued in New Mexico, when the case was proceeding in Vermont, and during the course of the proceedings here, all three states were constrained by the jurisdictional provisions of sections 205 and 206 of the act, and only New Mexico had continuing, exclusive jurisdiction over the spousal support provisions of the Final Decree. Neither Vermont nor Hawaii assumed that jurisdiction, and neither had the power to amend [Colley's] support obligations.

## IV. CONCLUSION

This, then, is a matter of jurisdiction,.... While lacking focus on H.R.S. §§ 576B–205(f) and 576B–206(c), [Underwood] has consistently argued that the Hawaii Family Court was limited by the terms of the New Mexico order when modifying [Colley's] spousal support obligation. Even if [Underwood] had never raised this issue before, this Court always has the obligation to determine whether the court below had jurisdiction over the subject matter before it....

. . . .

[Underwood] urges this Court to reverse the order of the court below, reinstate [Colley's] support obligation at an amount no less than the $2,554.00 per month minimum amount provided for in the New Mexico spousal support order, and award [Underwood] her fees and costs in the Family Court and on appeal.

In the Hawaii Revised Statutes (HRS) (Supp.2005), Hawai'i's UIFSA states, in relevant part:

§ 576B–101 **Definitions.** In this chapter:

. . . .

"Duty of support" means an obligation imposed or imposable by law to provide support for a child, spouse, or former spouse, including an unsatisfied obligation to provide support.

. . . .

"Initiating state" means a state from which a proceeding is forwarded or in which a proceeding is filed for forwarding to a responding state under this chapter or a law or procedure substantially similar to this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act.

"Initiating tribunal" means the authorized tribunal in an initiating state.

"Issuing state" means the state in which a tribunal issues a support order or renders a judgment determining parentage.

"Issuing tribunal" means the tribunal that issues a support order or renders a judgment determining parentage.

. . . .

"Register" means to file a support order ... in the family court of this State.

. . . .

"Responding state" means a state in which a proceeding is filed or to which a proceeding is forwarded for filing from an initiating state under this chapter or a law or procedure substantially similar to this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act.

"Responding tribunal" means the authorized tribunal in a responding state.

"Spousal support order" means a support order for a spouse or former spouse of the obligor.

. . . .

"Support order" means a judgment, decree, or order, whether temporary, final, or subject to modification, for the benefit of a child, a spouse, or a former spouse, which provides for monetary support, health care, arrearages, or reimbursement, and may include related costs and fees, interest, income withholding, attorney's fees, and other relief.

"Tribunal" means a court, administrative agency, or quasi-judicial entity authorized to establish, enforce, or modify support orders or to determine parentage.

. . . .

[§ 576B–205] **Continuing, exclusive jurisdiction**.....

. . . .

(f) A tribunal of this State issuing a support order consistent with the law of this State has continuing, exclusive jurisdiction over a spousal support order throughout the existence of the support obligation. A tribunal of this State may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state.

§ 576B–206 **Enforcement and modification of support order by tribunal having continuing jurisdiction.** (a) A tribunal of this State may serve as an initiating

tribunal to request a tribunal of another state to enforce or modify a support order issued in that state.

(b) A tribunal of this State that has continuing, exclusive jurisdiction over a support order may act as a responding tribunal to enforce or modify the order. If a party subject to the continuing, exclusive jurisdiction of the tribunal no longer resides in the issuing state, in subsequent proceedings the tribunal may apply section 576B–316 to receive evidence from another state and section 576B–318 to obtain discovery through a tribunal of another state.

(c) A tribunal of this State which lacks continuing, exclusive jurisdiction over a spousal support order may not serve as a responding tribunal to modify a spousal support order of another state.

. . . .

**[§ 576B–301] Proceedings under this chapter.** (a) Except as otherwise provided in this chapter, this article applies to all proceedings under this chapter.

(b) This chapter provides for the following proceedings:

. . . .

(3) Registration of an order for spousal support or child support of another state for enforcement pursuant to Article 6;

. . . .

(c) An individual petitioner or a support enforcement agency may commence a proceeding authorized under this chapter by filing a petition in an initiating tribunal for forwarding to a responding tribunal or by filing a petition or a comparable pleading directly in a tribunal of another state which has or can obtain personal jurisdiction over the respondent.

. . . .

**[§ 576B–304] Duties of initiating tribunal.** (a) Upon the filing of a petition authorized by this chapter, an initiating tribunal of this State shall forward three copies of the petition and its accompanying documents:

(1) To the responding tribunal . . . .

. . . .

**[§ 576B–313] Costs and fees.** (a) The petitioner may not be required to pay a filing fee or other costs.

(b) If an obligee prevails, a responding tribunal may assess against an obligor filing fees, reasonable attorney's fees, other costs, and necessary travel and other reasonable expenses incurred by the obligee and the obligee's witnesses. The tribunal may not assess fees, costs, or expenses against the obligee or the support enforcement agency of either the initiating or the responding state, except as provided by other law. Attorney's fees may be taxed as costs, and may be ordered paid directly to the attorney, who may enforce the order in the attorney's own name. Payment of support owed to the obligee has priority over fees, costs, and expenses.

(c) The tribunal shall order the payment of costs and reasonable attorney's fees if it determines that a hearing was requested primarily for delay. In a proceeding under Article 6, a hearing is presumed to have been requested primarily for delay if a registered support order is confirmed or enforced without change.

. . . .

**[§ 576B–601] Registration of order for enforcement.** A support order . . . issued by a tribunal of another state may be registered in this State for enforcement.

**[§ 576B–602] Procedure to register order for enforcement.** (a) A support order . . . of another state may be registered in this State by sending the following documents and information to the registering tribunal:

(1) A letter of transmittal to the registering tribunal requesting registration and enforcement;

(2) Two copies, including one certified copy, of all orders to be registered, including any modification of an order;

(3) A sworn statement by the party seeking registration or a certified statement by the custodian of the records showing the amount of any arrearage;

(4) The name of the obligor and, if known:

(A) The obligor's address and social security number;

(B) The name and address of the obligor's employer and any other source of income of the obligor; and

(C) A description and the location of property of the obligor in this State not exempt from execution; and

(5) The name and address of the obligee and, if applicable, the agency or person to whom support payments are to be remitted.

(b) On receipt of a request for registration, the registering tribunal shall cause the order to be filed as a foreign judgment, together with one copy of the documents and information, regardless of their form.

(c) A petition or comparable pleading seeking a remedy that must be affirmatively sought under other law of this State may be filed at the same time as the request for registration or later. The pleading must specify the grounds for the remedy sought.

[§ 576B–603] **Effect of registration for enforcement.** (a) A support order or income withholding order issued in another state is registered when the order is filed in a tribunal of this State.

(b) A registered order issued in another state is enforceable in the same manner and is subject to the same procedures as an order issued by a tribunal of this State.

(c) Except as otherwise provided in this article, a tribunal of this State shall recognize and enforce, but may not modify, a registered order if the issuing tribunal had jurisdiction.

[§ 576B–604] **Choice of law.** (a) The law of the issuing state governs the nature, extent, amount, and duration of current payments and other obligations of support and the payment of arrearages under the order.

(b) In a proceeding for arrearages, the statute of limitation under the laws of this State or of the issuing state, whichever is longer, applies.

. . . .

§ 576B–605 **Notice of registration of order.** (a) When a support order or income withholding order issued in another state is registered, the registering tribunal shall notify the nonregistering party. The notice must be accompanied by a copy of the registered order and the documents and relevant information accompanying the order.

(b) The notice must inform the nonregistering party:

(1) That a registered order is enforceable as of the date of registration in the same manner as an order issued by a tribunal of this State;

(2) That a hearing to contest the validity or enforcement of the registered order must be requested within twenty days after notice;

(3) That failure to contest the validity or enforcement of the registered order in a timely manner will result in confirmation of the order and enforcement of the order and the alleged arrearages and precludes further contest of that order with respect to any matter that could have been asserted; and

(4) Of the amount of any alleged arrearages.

(c) Upon registration of an income withholding order for enforcement, the registering tribunal shall notify the obligor's employer pursuant to sections 571–52, 571–52.2, 571–52.3, and 576E–16.

(d) For the purposes of this section, service of the notice shall be by personal service or certified mail, return receipt requested. After initial service is effected, additional service upon a party shall be satisfied by regular mail to the party's last known address. . . .

§ 576B–606 **Procedure to contest validity or enforcement of registered order.** (a) A nonregistering party seeking to contest the validity or enforcement of a registered order in this State shall request a hearing within twenty days after notice of the registration. The nonregistering party may seek to vacate the registration, to assert any defense to an allegation of non-

compliance with the registered order, or to contest the remedies being sought or the amount of any alleged arrearages pursuant to section 576B–607.

(b) If the nonregistering party fails to contest the validity or enforcement of the registered order in a timely manner, the order is confirmed by operation of law.

(c) If a nonregistering party requests a hearing to contest the validity or enforcement of the registered order, the registering tribunal shall schedule the matter for hearing and give notice to the parties of the date, time, and place of the hearing.

(d) For the purposes of this section, service of the notice of a hearing regarding the validity or enforcement of the registered order, shall be satisfied by regular mail to the party's last known address....

**[§ 576B–607] Contest of registration or enforcement.** (a) A party contesting the validity or enforcement of a registered order or seeking to vacate the registration has the burden of proving one or more of the following defenses:

(1) The issuing tribunal lacked personal jurisdiction over the contesting party;

(2) The order was obtained by fraud;

(3) The order has been vacated, suspended, or modified by a later order;

(4) The issuing tribunal has stayed the order pending appeal;

(5) There is a defense under the law of this State to the remedy sought;

(6) Full or partial payment has been made; or

(7) The statute of limitation under section 576B–604 precludes enforcement of some or all of the arrearages.

(b) If a party presents evidence establishing a full or partial defense under subsection (a), a tribunal may stay enforcement of the registered order, continue the proceeding to permit production of additional relevant evidence, and issue other appropriate orders. An uncontested portion of the registered order may be enforced by all remedies available under the law of this State.

(c) If the contesting party does not establish a defense under subsection (a) to the validity or enforcement of the order, a tribunal of this State shall issue an order confirming the order.

**[§ 576B–608] Confirmed order.** Confirmation of a registered order, whether by operation of law or after notice and hearing, precludes further contest of the order with respect to any matter that could have been asserted at the time of registration.

. . . .

**[§ 576B–901] Uniformity of application and construction.** This chapter shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this chapter among states enacting it.

HRS § 576B–205(f), Vermont's 15B V.S.A. § 205(f), and New Mexico's N.M.S.A.1978, § 40–6A–211(a) and (b) are the same. Pursuant to them, New Mexico "has continuing, exclusive jurisdiction" to modify a spousal support order throughout "the existence of the support obligation" and Vermont and Hawai'i "may not modify a spousal support order issued by a tribunal of another state having continuing, exclusive jurisdiction over that order under the law of that state."

HRS § 576B–206(c) and Vermont's 15B V.S.A. § 206(c) are the same. However, these statutory subsections are redundant to what has already been stated in HRS § 576B–205(f) and 15B V.S.A. § 205(f). Therefore, the fact that New Mexico's UIFSA does not contain a similar subsection is inconsequential because the same law has already been stated in N.M.S.A.1978, § 40–6A–211(a) and (b).

In light of the above, we conclude as follows:

(a) Vermont could have been, and pursuant to HRS § 576B–206(a) Hawai'i may be, an "initiating state" to forward to New Mexico Colley's request for a modification of the spousal support order contained in New Mexico's August 9, 2001 Final Decree.

(b) New Mexico has continuing, exclusive jurisdiction over its spousal support order. Therefore, New Mexico may act as a re-

sponding tribunal to enforce or modify its order. Underwood and Colley are subject to the continuing, exclusive jurisdiction of New Mexico notwithstanding the fact that neither resides in New Mexico.

(c) Because Hawai'i and Vermont lack continuing, exclusive jurisdiction over New Mexico's spousal support order, neither may serve as a responding tribunal to modify New Mexico's spousal support order.

(d) Hawai'i may enforce the spousal support order contained in New Mexico's August 9, 2001 Final Decree.

## CONCLUSION

Accordingly, we vacate the August 27, 2004 Amended Order Amending the Findings of Fact, Conclusions of Law and Order and remand for compliance with HRS §§ 576B–206(a), –301(c), –304, and –313.

