**Electronically Filed
Supreme Court
SCWC-12-0000703
02-MAR-2017
08:54 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---oOo---

_____

KARL ROBERT BRUTSCH,
Respondent/Plaintiff-Appellee/Cross-Appellant,

vs.

CELIA KAY BRUTSCH,
Petitioner/Defendant-Appellant/Cross-Appellee.
_____

SCWC-12-0000703

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-12-0000703; FC-D NO. 09-1-2906)

MARCH 2, 2017

McKENNA, POLLACK, WILSON, JJ.,
WITH RECKTENWALD, C.J., DISSENTING, WITH WHOM NAKAYAMA, J.,
JOINS

OPINION OF THE COURT BY McKENNA, J.

### I. Introduction

This case arises from a contentious divorce proceeding

between Celia Kay Brutsch ("Wife") and Karl Robert Brutsch

("Husband"). Wife timely applied for writ of certiorari ("Application") from the Judgment entered by the Intermediate Court of Appeals ("ICA") pursuant to its May 12, 2015 Summary Disposition Order ("SDO"). In relevant part, the ICA vacated in part the Family Court of the First Circuit's ("family court['s]"): (1) "Decree Granting Absolute Divorce and Awarding Child Custody" ("divorce decree") because it denied Husband any Category 3 credit for gifts and inheritance, and (2) "Order Re: Plaintiff's Motion for Reconsideration and for Rule 68 Attorney's Fees Filed February 16, 2012" and "Order Denying Plaintiff's Motion for Reconsideration of Decision Announced March 14, 2012, Filed March 21, 2012."

In her Application, Wife presents two questions:

A. Given [Husband's] failure to document a consistent amount for his inheritance, show it was used for marital expenses, or rebut a presumption of gift to the marital partnership, did the ICA commit grave error when it substituted its own judgment for that of the trial judge, and vacated his ruling rejecting [Husband's] demand for $134,235, $140,000, $190,000, $236,235, or $324,235,[1] in Category 3 credits?

B. Given [Husband's] failure to tender a comprehensive settlement offer as to all contested issues, offer to settle any one of the contested matters, or justify his request for fees with billings or time sheets, did the ICA commit grave error when it substituted its own judgment for that of the trial judge, and vacated his ruling denying [Husband's] demand for [Hawaiʻi Family Court Rules] Rule 68 fees and costs?

---

[1] Husband requested $134,235 in Category 3 credits in his motion for reconsideration. According to Wife, he had requested these other amounts before.

2

With respect to the first issue in the Application, we hold that the ICA was correct in ruling that the family court erred in stating that the record was "bereft of any competent or credib[le] evidence that . . . monies were actually contributed to the marriage," and therefore remanding this issue for further proceedings, along with other rulings of the family court that are not at issue in the Application. Brutsch v. Brutsch, No. CAAP-12-0000703, at 7 (App. May 12, 2015) (SDO). When the family court addresses the issue of Category 3 credits on remand, however, it must do so in light of this court's rulings regarding Category 3 credits in Hamilton v. Hamilton, 138 Hawaiʻi 185, 378 P.3d 901 (2016). In addition, at various points in this litigation, Husband argued differing amounts for Category 3 credits. At oral argument, Husband conceded that the only amounts he claims for Category 3 credits total $134,235, consisting of gifts reflected in checks totalling $74,235, the $40,000 total he received as gifts in $10,000 increments, and the $20,000 annuity he inherited used to purchase a Jacuzzi for the Maunawili house. Therefore, the family court's review of possible Category 3 credits will be limited to those amounts, totalling $134,235. In addition, in determining Category 3 credits, the family court must also address whether Husband already received credit for any of the subject amounts through Wife's pre-trial purchase of Husband's interest in the Maunawili

3

home, as Husband has conceded that Wife bought out his interest in the home.

With respect to the second issue in the Application, this court recently held that Hawai'i Family Court Rules ("HFCR") Rule 68 does not apply to proceedings governed by Hawai'i Revised Statutes ("HRS") § 580-47 (Supp. 2011). See Cox v. Cox, 138 Hawai'i 476, 382 P.3d 288 (2016). This divorce proceeding is governed by HRS § 580-47. We therefore vacate the ICA's ruling vacating the family court's denial of Husband's HFCR Rule 68 motion. In doing so, we further explain why in Cox we held HFCR Rule 68 inapplicable in divorce cases.

## II. Background

### A. Factual Background

#### 1. Overview

Husband and Wife (collectively, "the couple") were married in 1991. The couple has a son born in 1996 and a daughter born in 2001. Husband filed for divorce on September 8, 2009.

Although the only issues in the Application concern Husband's alleged Category 3 credits and his HFCR Rule 68 motion, there were many issues addressed by the family court during this contentious divorce and related proceedings. Five days before Husband filed for divorce, Wife filed for and obtained a temporary restraining order. There were pre-decree

4

motions concerning temporary custody, temporary child support, occupancy of the marital residence, wasting of assets, prohibition against abuse, payment of monthly financial obligations, attorney's fees and costs, sharing of marital expenses, and payment of expenses for private school, for psychological evaluations or treatment, and for appointment of custody evaluators. There were also multiple pre-trial motions concerning the same topics.

With respect to child custody, before trial, the family court appointed a Custody Evaluator. After various studies, the Custody Evaluator recommended that Wife be awarded sole legal and physical custody of the minor children.

As Wife had already bought out Husband's interest in the family home before trial, the main issues requiring resolution at the October 3-4, 2011 trial were child custody and some property division matters. According to Husband, child custody was the most hotly contested dispute.

After the trial, the family court rendered its oral ruling on November 2, 2011. In summary, the family court (1) denied mother's request for sole custody of the children and instead maintained joint legal and joint physical custody and the couple's time-sharing schedule; (2) addressed child support and payment of the children's private school and extracurricular expenses; (3) deferred decisions to the couple regarding the

5

children's higher education expenses and how to use their existing education funds; (4) addressed medical and dental insurance and past due amounts; (5) addressed life insurance policy requirements; (6) decided how the couple would claim tax dependencies of their children; (7) determined how the couple's retirement funds would be equalized; (8) ordered that artwork be sold and proceeds evenly split; (9) ordered that all joint accounts be evenly split, and provided that each party was to take his or her own items out of the safety deposit box; (10) decided how joint securities and separately titled stock accounts were to be divided; (11) determined how to divide automobiles and the boat; and (12) awarded Husband all of his family business interest and his Kaneohe Yacht Club membership. Additionally, as noted, the property divided between the parties did not include the couple's family home in Maunawili, as Wife had purchased Husband's interest prior to trial. Finally, the family court also indicated it would award Wife attorney's fees and costs, and eventually awarded Wife $21,984.46 in fees and costs.

The court did not address any possible Category 3 credit for Husband or whether Husband should receive attorney's fees pursuant to HFCR Rule 68.[2] On February 16, 2012, Husband filed a

_____

[2] HFCR Rule 68 states:

(continued . . .)

"Motion for Reconsideration and for Rule 68 Attorney's Fees"

("Motion") based on a September 30, 2010, Rule 68 letter offer.[3]

The offer was apparently rejected by Wife.

Husband argued that the primary issue in the divorce
proceedings was the children's custody, not property division.
Accordingly, because Wife did not prevail in her quest for sole
custody, Husband's attorney argued that Wife was responsible for
Husband's attorney's fees that were incurred after the Rule 68
offer was made for services rendered on the issue of the
children's custody, and claimed entitlement to $15,500 in

---

(. . . continued)

> At any time more than 20 days before any contested hearing
> held pursuant to HRS sections 571-11 to 14 (excluding law
> violations, criminal matters, and child protection matters)
> is scheduled to begin, any party may serve upon the adverse
> party an offer to allow a judgment to be entered to the
> effect specified in the offer. Such offer may be made as
> to all or some of the issues, such as custody and
> visitation. Such offer shall not be filed with the court,
> unless it is accepted. If within 10 days after service of
> the offer the adverse party serves written notice that the
> offer is accepted, any party may then file the offer and
> notice of acceptance together with proof of service thereof
> and thereupon the court shall treat those issues as
> uncontested. An offer not accepted shall be deemed
> withdrawn and evidence thereof is not admissible, except in
> a proceeding to determine costs and attorney's fees. If
> the judgment in its entirety finally obtained by the
> offeree is patently not more favorable than the offer, the
> offeree must pay the costs, including reasonable attorney's
> fees incurred after the making of the offer, unless the
> court shall specifically determine that such would be
> inequitable.

HFCR Rule 68.

[3] The Motion also refers to an August 29, 2011 letter, which Husband asserted
was a second HFCR Rule 68 offer letter. However, Husband does not argue that
he is entitled to fees based on the August 29, 2011 offer letter, likely
because Husband explicitly specified that the offer was a "package deal."

attorneys' fees in fees under HFCR Rule 68.  The Rule 68 offer

letter stated:

> Please consider this an HFCR Rule 68 offer to settle all matters relating to this divorce.  As you know, you have 10 days from the receipt of this offer to accept it, otherwise it is deemed rejected, and if you do not obtain a result that is patently better as to property division or child custody/visitation/support at trial, your client will owe [Husband] costs and attorney's fees from the date of this offer.
>
> We propose that the property division between the parties be as set out in the enclosed Property Division Chart.  Basically, we have divided the marital home and the associated mortgage, so this issue is resolved.  Otherwise, the Chart shows that each party keep the assets and debts presently in their own names.  Note that I have discounted the values of the 401k's by 30% (for state and federal taxes) because these are pretax amounts.  [Wife] takes all the household effects presently in the house (except for the two rattan chairs and [Husband's] personal items).  Each party shall keep the children's trust monies (which derive from [Husband's] father's inheritance) for the children's educational expenses only and be required to account for the trust monies upon demand by the other party.  Each party pays their own debts ([Wife] will, of course, be responsible for payment of the new mortgage on the marital residence which she is acquiring per the agreement of the parties).  [Husband] waives any claim to an equalization payment.
>
> Neither party is seeking alimony.
>
> As for the children, we propose that the parties share joint legal and physical custody of the children.  Child support shall be paid per Guidelines.  [Husband] shall continue to cover the children for medical insurance, and the parties will split equally all uncovered medical expenses, including orthodontic care.  The parties will split the children's tuitions in proportion to their incomes (presently the ratio is 59% for [Husband] and 41% for [Wife]), and the parties will split equally all other children's educational expenses (e.g., after-school care, extracurricular activities, school lunch expense, etc.).  The parties will work out a sharing arrangement (e.g., 4-3-3-4 or 5-2-2-5) and agree on sharing for school breaks, birthdays, holidays, etc.  If the parties cannot agree on the sharing arrangement, they shall mediate the issue before filing any court action.
>
> We believe that this settles all the issues in this case.  We await your reply.

Husband also argued that he was entitled to $134,235 in

Category 3 credits based on the evidence at trial.  In the

Motion, Husband cited to "Plaintiff's Ex. 10" as evidence. That exhibit included canceled checks from the estate of Husband's late father in the amounts of $50,000, $9,235, and $15,000, and an investment statement for a beneficiary annuity apparently valued at $20,000. Without providing any record citations, Husband also asserted that "[he] . . . testified about receiving $40,000 in four $10,000 payments as gifts from his father from 1996 to 2001 just before his father died. . . . [Husband] testified that he spent . . . [gifted] funds on the house (which [Wife] now owns), on a boat (which [Husband] now owns), and other expenses during the marriage." In summarizing his motion, Husband argued:

> Based on the summary of the above issues, [Wife] owes [Husband] at least $13,000 in Rule 68 attorney's fees, and probably $15,500. In addition, the credits to which [Wife] is entitled under this Court's decision are more than cancelled by the credit to which [Husband] is entitled in Category 3 credit. Even though the net of these amounts is that [Wife] owes [Husband] about $50,000 (this is assuming that this Court awards [Wife] almost $22,000 in attorney's fees which, as argued above, is not justified), [Husband] is not looking for an award against [Wife] of this amount. [Husband] is simply requesting that this Court's final decree state that neither party owes the other any amount. As [Husband] offered in his Rule 68 letter over a year ago and in his most recent Rule 68 letter (which even threw in a $20,000 incentive which is no longer offered as [Wife] chose to go to trial at great expense to the parties and the marital estate), this should simply be a "walk-away" marriage with joint custody of the children. Based on such a decree, the only matter left for the parties to end this long unnecessarily drawn out affair will be to sell their art collectibles and divide the proceeds as ordered by this Court.
> If [Husband] is not awarded his Category 3 credit and is required to make payments to [Wife] for attorney's fees and an amount from his 401(k), then even the offer to settle here as a "walk away" marriage is withdrawn, and [Husband] will seek his full remedies on appeal.

9

At a hearing on March 14, 2012, the court orally ruled on Husband's Motion, stating:

> With regard to the motion for reconsideration, the court could have and should have perhaps been more precise. But by its omission the court implicitly ruled on the claim for Category 3 reimbursements. The court will explicitly do so at this time. The court finds that while it may be accurate to state that [Husband] did receive monies, the record is bereft of any competent or credibility [sic] evidence that monies were actually contributed to the marriage. Therefore the Rule -- the Category 3 claim ultimately fails for lack of evidence as far as what's been presented to the court at this particular juncture. So therefore that portion of the motion for reconsideration is denied.
> 
> With regard to the other issue as to the attorney's fees, the attorney's fees [issue] is bound up as part of the motion for recon but also as part of the Rule 68. The court finds based on the credible evidence that given the fact that the motion for recon is denied as to the Category 3 claim, with regard to the attorney's fees and costs claimed by defendant respondent [sic] is indeed appropriate. The Rule 68 is predicated on the entire decree being patently more favorable or unfavorable depending upon the offer. [Wife's attorney's] argument with regard to the fact that the Rule 68 offer that was presented was not a complete offer, that resounds with the court.
> 
> On the question of custody, again it was clear that [Wife]'s claim was that she wanted full custody. [Husband]'s advocating joint, to establish joint. However, a significant portion of the decree also dealt with the financial issues which would be the portion of the motion for reconsideration. In balance the decree is not patently more favorable to one or the other, therefore Rule 68 fails. The court's prior orders with regard to the $21,900 [for Wife's attorney's fees] stand[]. Court will affirm that amount. That order will be signed by the court.[4]

Husband filed a subsequent motion for reconsideration of the March 14, 2012 oral ruling, which was denied.

The family court entered its "Decree Granting Absolute Divorce and Awarding Child Custody" on April 2, 2012.

---

4   The family court entered its written order on April 2, 2012.

10

### 2. Husband's Inheritance

In his Motion, Husband did not provide the family court with citations to the record regarding each of the gifts or the inheritance received by Husband from his father, nor did Husband provide citations in his Response to the Application.  Husband, however, provided some citations in the opening brief for his cross-appeal to the ICA.  **[100:20–21]**  The following is a summary of Husband's trial testimony and the citations provided in the ICA brief on the inheritance issue.

Husband testified that in 1996, Husband's father gifted $10,000 for the purchase of a family home in Waikele.  He asserted that in 1999 and 2001, Husband's father gifted $10,000 three separate times.  That money was also used to purchase the Waikele house and home furnishings.[5]

In 2001, during the marriage, Husband's father died.  Husband incrementally received a "substantial inheritance" of at least $70,000.  Because Husband was "very much into boating," about $20,000 of the inheritance funds was used to purchase a boat, $10,000 on an SUV to pull the boat, both of which he received in the divorce decree.  The remainder was "invested back into the [Maunawili] house," for painting the house, a new

---

[5] Wife testified the couple sold the Waikele house and received $150,000 in proceeds.  That money went to state and federal taxes, to pay off a portion of Husband's personal loan, summer school and other educational activities for the children, and for repairs on the Maunawili home.

bathroom, electrical work, new flooring, a patio, a Jacuzzi, and putting in a rock wall.

Part of Husband's inheritance included a share of his father's bakery and the building in which it was located. Husband's brother received the remaining share in the bakery and building. Since 2001, Husband and his brother, in partnership, have rented out the building. Husband received his share of the monthly rental proceeds, amounting to approximately $10,000 to $20,000 a year, depending on the money spent to upkeep the building in any given year. For a period, "all the money" was used to pay Son's private school tuition of $16,000.

Neither the Pennsylvania building nor its rental income was the subject of Husband's Motion with respect to Category 3 credits. Despite only claiming an alleged Category 3 credit of $134,235 in his Motion, Husband also included the Pennsylvania rental income, in the amount of $190,000, as a claimed Category 3 credit in his cross-appeal to the ICA. Notably, Husband had argued in his pre-trial Trial Memorandum that he should be awarded Category 3 credit for the rental income generated by the Pennsylvania building, in addition to the checks and annuity he received as an inheritance from his late father.

At oral argument, however, Husband clarified his Category 3 claim, and conceded that he is claiming Category 3 credit only for the checks totalling $74,235, the $40,000 total he testified

12

he received from his father consisting of four $10,000 gifts received in 1996, and 1999 to 2001, and a $20,000 annuity he testified he inherited and used to purchase a Jacuzzi for the Maunawili home. Thus, the maximum amount of the Husband's possible Category 3 credit, as argued by Husband's counsel, is $134,235.

Pursuant to HFCR Rule 52(a), after the filing of the appeals to the ICA, on October 8, 2012, the court issued its "Findings of Fact and Conclusions of Law." In its Findings of Fact, the family court explained the extensive pre-trial, trial, and post-trial proceedings of this contentious divorce case. In its Conclusions of Law, the family court concluded that its "November 2, 2011 oral trial decision was proper, appropriate, just and equitable under the circumstances . . . ." It also ruled that its "decision to deny . . . [Husband]'s . . . Motion . . . was proper, appropriate, just and equitable under the circumstances . . . ."

**E. Appeal to the ICA**

On August 9 and 13, 2012, respectively, Wife and Husband both timely appealed to the ICA. The issues we address on certiorari arise out of Husband's cross-appeal. Before addressing that cross-appeal, we note that Wife contended in her appeal that the family court erred in: (1) awarding Wife and Husband joint physical legal custody of the parties' two

13

children and continuing the alternating-week custody schedule; and (2) its ruling regarding child support, education and medical expenses, and reimbursement for pre-decree expenses. See Brutsch, SDO at 2. The ICA affirmed the family court with respect to issue (1) and concluded that the family court had made some errors concerning matters in issue (2), and ordered a remand. See id. at 4-6.

Husband's cross-appeal raised the two issues that are the subject of the Application. He argued the family court erred in: (1) failing to award Husband any Category 3 credit; (2) denying Husband's request for Rule 68 attorney's fees; and (3) awarding Wife $21,984.46 in attorney's fees and costs.

With respect to the cross-appeal, the ICA held that "Husband was not required to trace the money he received in gifts and inheritances into specific purchases that contributed to the marriage in order to be entitled to a Category 3 credit," and that therefore "the [f]amily [c]ourt erred in denying Husband any Category 3 credit on this basis." Id. at 7.

As to the award of Rule 68 attorney's fees, the ICA concluded that, pursuant to Owens v. Owens, 104 Hawai'i 292, 310, 88 P.3d 664, 682 (App. 2004), the matter must be remanded to the family court for a determination as to "whether its final judgment on child custody is patently not more favorable to Wife than Husband's HFCR Rule 68 offer on the custody issue."

14

Brutsch, SDO at 8-9. On remand, the family court was also directed to consider whether HFCR Rule 68 attorney's fees with respect to financial issues would be appropriate, in light of the family court's consideration on remand of Husband's Category 3 credits. See id. at 9. The ICA noted that "if the [f]amily [c]ourt determines that the judgment entered . . . was patently not more favorable to Wife than Husband's offer, it should consider whether the award of fees would be inequitable." Id.

The ICA did not find the family court abused its discretion in awarding Wife attorney's fees, and therefore affirmed the award. See id.

Based in part on the foregoing, the ICA "(1) affirm[ed] in part and vacate[d] in part the [d]ivorce [d]ecree; (2) vacate[d] the [f]amily [c]ourt's denial of Husband's request for HFCR Rule 68 attorney's fees; (3) affirm[ed] the Order Awarding Attorney's Fees to Wife; and (4) remand[ed] the case for further proceedings consistent with this Summary Disposition Order." Id. at 9-10.

## F. Application for Writ of Certiorari

As noted earlier, Wife presents two questions to this court:

> A. Given [Husband's] failure to document a consistent amount for his inheritance, show it was used for marital expenses, or rebut a presumption of gift to the marital partnership, did the ICA commit grave error when it substitute its own judgment for that of the trial judge, and vacated his ruling rejecting [Husband's] demand for

15

$134,235, $140,000, $190,000, $236,235, or $324,235, in Category 3 credits?

B. Given [Husband's] failure to tender a comprehensive settlement offer as to all contested issues, offer to settle any one of the contested matters, or justify his request for fees with billings or time sheets, did the ICA commit grave error when it substituted its own judgment for that of the trial judge, and vacated his ruling denying [Husband's] demand for HFCR Rule 68 fees and costs?

We accepted certiorari and held oral argument on the Application.

### III.  Standards of Review

#### A.    Family Court Decisions

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion. Thus, we will not disturb the family court's decision on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Kakinami v. Kakinami, 127 Hawai'i 126, 136, 276 P.3d 695, 705 (2012) (quoting Fisher v. Fisher, 111 Hawai'i 41, 46, 137 P.3d 355, 360 (2006)).

> It is well established that a family court abuses its discretion where "(1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason."

Id. at 155-56, 276 P.3d at 724-25 (emphasis omitted) (quoting Tougas v. Tougas, 76 Hawai'i 19, 26, 868 P.2d 437, 444 (1994)).

#### B.    Property Division

Hawaii's appellate courts "review the family court's final division and distribution of the estate of the parties under the

16

abuse of discretion standard, in view of the factors set forth in HRS § 580-47 and partnership principles."  Tougas, 76 Hawaiʻi at 26, 868 P.2d at 444 (quoting Gussin v. Gussin, 73 Haw. 470, 486, 836 P.2d 484, 492 (1992)) (footnote omitted).  "The family court's determination of whether facts present valid and relevant considerations authorizing a deviation from the partnership model division is a question of law that this court reviews under the right/wrong standard of appellate review." Gordon v. Gordon, 135 Hawaiʻi 340, 348, 350 P.3d 1008, 1016 (2015) (citing Jackson v. Jackson, 84 Hawaiʻi 319, 332–33, 933 P.2d 1353, 1366–67 (App. 1997)).

## C.    Findings of Fact and Conclusions of Law

> The family court's FOFs are reviewed on appeal under the "clearly erroneous" standard.  A[n] FOF is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is nonetheless left with a definite and firm conviction that a mistake has been made.  "Substantial evidence" is credible evidence which is of sufficient quality and probative value to enable a person of reasonable caution to support a conclusion.
>
> On the other hand, the family court's COLs are reviewed on appeal de novo, under the right/wrong standard.  COLs, consequently, are [ ]not binding upon an appellate court and are freely reviewable for their correctness.

Kakinami, 127 Hawaiʻi at 136, 276 P.3d at 705 (quoting Fisher, 111 Hawaiʻi at 46, 137 P.3d at 360).

## IV. Discussion

### A. Husband's Claimed Category 3 Credit

We recently published a comprehensive opinion addressing alleged Category 3 credits similar to those at issue in this case. See Hamilton, 138 Hawaiʻi 185, 378 P.3d 901. In his Motion before the family court, Husband claimed that he should have been awarded $134,235 as Category 3 credit, consisting of the following:

- $40,000 in gifts from Husband's father prior to his death in 2001 (spent on couple's former Waikele home, proceeds from which were spent on taxes, paying down Husband's personal loan, the children's educational expenses, and repairs to the Maunawili home)
- $74,235 – sum of checks received from Husband's father's estate (spent on a boat, an SUV, and improvements to the Maunawili home)
- $20,000 – value of an inherited annuity (spent on installing a jacuzzi at the Maunawili home)

Wife testified that she was unaware that Husband received funds from his father's estate other than $10,000 that was gifted to each family member, including Husband, totaling $40,000. Wife was aware that Husband "received money to make payments for . . . [S]on's tuition occasionally."

Although the family court was initially silent at the November 2, 2011 hearing as to why no Category 3 credit was given to Husband, at the March 14, 2012 hearing on Husband's Motion, the court explained its reasoning as follows: "the record is bereft of any competent or credib[le] evidence that [Husband's inherited or gifted] monies were actually contributed to the marriage." The ICA, however, found the family court

18

erred by denying Category 3 credit on this basis.  See Brutsch, SDO at 7.

On remand, the family court must address Husband's alleged Category 3 credits in light of this court's rulings in Hamilton. In addressing the alleged Category 3 credits, we also note that the parties had reached an outside agreement with respect to the Maunawili home, with Wife purchasing Husband's share prior to trial.  Accordingly, to the extent Husband may have invested any Category 3 credits into this particular marital partnership property, Husband may have already received credit for Category 3 amounts he invested in this home.  The family court must also address this issue.  In addition, the family court must therefore address whether, pursuant to Hamilton, any of the alleged Category 3 amounts constituted gifts.

**B.    Attorney's Fees Pursuant to HFCR Rule 68**

The second issue on certiorari concerns the family court's denial of Husband's HFCR Rule 68 motion for attorney's fees, which the ICA vacated based on its decision in Owens v. Owens, 104 Hawaiʻi 292, 88 P.3d 664 (App. 2004).  In Owens, the ICA held that the family court was required to address an HFCR Rule 68 offer issue by issue.  See id. at 310, 88 P.3d at 682.  If the offer on an issue was not sufficiently specific or if the parties had settled an issue, Rule 68 fees would not be permitted for fees incurred on that issue.  See id. at 308-09,

88 P.3d at 680-81.  Otherwise, to ascertain whether fees should be awarded under Rule 68, the family court would need to examine the result on each remaining issue to see if the end result obtained by the offeree as a whole was patently not more favorable than the offer.  See id. at 310, 88 P.3d at 682.

Owens was decided under a previous version of HFCR Rule 68, which required that if all requirements for the award of HFCR Rule 68 fees had been met, the court "shall make an award of reasonable attorney's fees and costs to the offeror unless it specifically determines that such an award would be inequitable, considering the provisions of HRS § 580-47."  Id.  Effective January 1, 2015, HFCR Rule 68 had been amended to omit the reference to HRS § 580-47.

We recently held in Cox v. Cox, 138 Hawai'i 476, 382 P.3d 288 (2016), that HFCR Rule 68 does not apply to proceedings governed by HRS § 580-47.  HFCR Rule 68, which allows for an award of attorney's fees in addition to costs, is quite different from Rule 68 of the Hawai'i Rules of Civil Procedure, which only allows for costs.  In Cox, in summary, we first ruled that HFCR Rule 68 contravenes HRS § 580-47 because while HRS § 580-47(a) requires that an attorney fee award "shall appear just and equitable," HFCR Rule 68 mandates the award of attorney's fees to a party unless the court specifically determines that an award would be inequitable.  See id. at 481, 382 P.3d at 293.

20

Second, we concluded that HFCR Rule 68 abridges substantive rights of parties in violation of HRS § 602-11 (1985), which prohibits rules of practice and procedure from modifying the substantive rights of litigants, as the rule contravened the dictates of the governing statute, HRS § 580-47.  Finally, we pointed out that the operation of HFCR Rule 68 generated substantial complications due to inherent difficulties in applying its provisions.  See id.

This divorce proceeding is governed by HRS § 580-47. Therefore, pursuant to Cox, Husband is not entitled to fees under HFCR Rule 68.  This case further highlights why we invalidated HFCR Rule 68 in divorce cases.

First, the facts of this case illustrate the difficulty in applying HFCR Rule 68, as more fully explained in Cox.  See id. at 483-89, 382 P.3d at 295-301.  The HFCR Rule 68 offer in this case covers property division, child custody, child visitation, and child support.  Husband's property division offer includes specific offers as to retirement accounts, household effects, rattan chairs, personal items, children's trust monies, the use and accounting thereof, payment of debts, child custody, child support, medical insurance for the children, uncovered medical expenses, orthodontic care expenses, tuition expenses, educational expenses, including after school care expenses, extracurricular activity expenses, school lunch expenses, time

sharing arrangements, and time sharing for special days. According to Owens, the family court would be required to evaluate Husband's offer issue by issue, and only allow fees for those issues on which Husband met HFCR Rule 68 requirements. This would appear contrary to Husband's Rule 68 offer letter, which appears to have been a package deal as it started by stating, "Please consider this a[] HFCR Rule 68 offer to settle all matters relating to this divorce."

Moreover, the Owens standard is extremely difficult to apply. Attorney fee billings are not itemized in minutes or hours spent on discrete issues such as those included in the HFCR Rule 68 offer in this case.[6] In fact, in this case, Husband's counsel did not keep hourly records, and estimated the time he had spent on child custody issues. As it did in this case, HFCR Rule 68 actually leads to substantial appellate litigation in divorce cases just on Rule 68 issues, as the parties argue its applicability and application. Such protracted, contentious divorce proceedings are especially harmful when the divorcing couple has children.

---

[6] Because HFCR Rule 68 has been invalidated in divorce cases and is therefore inapplicable in this case, we do not address whether HFCR Rule 68 actually requires an evaluation of fees "issue by issue" or whether the offer must be compared to the judgment obtained as a whole. We note that HFCR Rule does state that "[i]f the judgment in its entirety finally obtained by the offeree is patently not more favorable than the offer, the offeree must pay the costs, including reasonable attorney's fees incurred after making of the offer, unless the court shall specially determine that such would be inequitable."

With respect to children, this case illustrates an additional concern regarding an award of attorney's fees under HFCR Rule 68 as stated in Cox.  Cox noted that a threat to impose payment of attorney fees may deter a parent from seeking a custody determination that would be in the best interests of the child:

> This tendency to potentially coerce a settlement is all the more problematic in actions involving child custody and visitation, which are both subject to HFCR Rule 68 . . . .  Because the determination of the terms of custody and visitation is dictated by the "best interests of the child," HRS § 571-46 (Supp. 2013), . . . "the possible impact on a party's pocketbook should have no influence on the child custody issue." . . . However, HFCR Rule 68's threat of penalizing a party-offeree, by requiring payment of the party-offeror's attorney's fees, could "deter a party whose genuine concern for the best interests of the child is motivating him or her to contest the award of child custody and/or visitation from continuing to contest the award of child custody and/or visitation."

Id. at 487-88, 382 P.3d 299-300 (footnote and some internal citations, brackets, and quotation marks omitted).

Establishing a financial disincentive for a parent to contest custody, when that parent has a legitimate concern for the best interests of the child, not only undermines the foundational principle of custody award determinations, but "[i]t is [also] contrary to societal interests" that such decisions are made without financial influence.  Id.  In this case, Husband argued for HFCR Rule 68 fees on the grounds that the main issue at trial was child custody.  Thus, the concerns expressed in Cox apply.

23

Importantly, in this case, the Child Custody Evaluator had recommended sole legal and physical custody to Wife. Wife was therefore advocating for a decision on child custody which, in the court-appointed Child Custody Evaluator's view, was in the best interests of the minor children. As factfinder, the family court was well within its discretion to rule otherwise, and we in no way question the joint custody ruling made by the family court. Yet, HFCR Rule 68 would on its face mandate an attorney fee award to Husband when he obtained a ruling contrary to the Child Custody Evaluator's recommendation. This case therefore illustrates how HFCR Rule 68 could not only be coercive, but could also run counter to the best interests of the child in child custody disputes.

Along these lines, it must also be noted that HFCR Rule 68 has a much more coercive impact on divorcing spouses with less financial resources as there exists the threat of having to pay a spouse's attorney's fees if one does not prevail on an issue in a divorce case, including an issue of child custody. In divorce cases, it is not unusual for one spouse to have much greater financial power. There are many divorce cases in which one spouse remains unrepresented by an attorney. In those cases, only the spouse with an attorney can take advantage of HFCR Rule 68. Thus, the spouse that cannot afford an attorney could be court ordered to pay the attorney fees of a spouse with

significantly greater financial resources.  This was the exact situation in Cox.

Even if both spouses had attorneys, as in this case, the spouse with greater economic power was in a much better position to make or reject a HFCR Rule 68 offer, knowing that he or she had the financial resources to withstand any later decision on fees.  For the spouse without economic power, an adverse HFCR Rule 68 award could be financially devastating.  Therefore, HFCR Rule 68 was a potentially coercive tool for a spouse with economic resources to exercise power and control over the spouse without economic might.  This concern was exacerbated in divorces involving domestic violence where the divorce was initiated by a battered spouse to end that power and control.

Finally, HRS § 580-47(a) and (f) allow a family court to make orders that are "just and equitable," including orders awarding attorney's fees and costs.[7]  Unfortunately, HFCR Rule 68

---

[7]  HRS § 580-47 provides in pertinent part:

> **§580-47  Support orders; division of property.**  (a)  Upon granting a divorce . . .the court may make any further orders as shall appear just and equitable . . . (4) allocating, as between the parties, the responsibility for the  . . . attorney's fees . . . incurred by each party by reason of the divorce.  In making these further orders, the court shall take into consideration: the respective merits of the parties, the relative abilities of the parties, the condition in which each party will be left by the divorce, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

(continued . . .)

allowed for the issuance of attorney fee orders in divorce cases that were not "just and equitable." For example, in this case, the family court had made an attorney fee and costs award in favor of Wife pursuant to HRS § 580-47, awarding her $21,984.46 in fees and costs, and had denied Husband's request for $15,500 in fees under HFCR Rule 68; additional sums could have been requested for subsequent litigation. Yet, pursuant to its interpretations of HFCR Rule 68, the ICA ordered a remand for the family court to consider whether Husband should be entitled to HFCR Rule 68 fees. Therefore, the court rule contradicted and could have negated the family court's award of "just and equitable" fees and costs pursuant to the statute. It is noted that even without HFCR Rule 68 being applicable to divorce cases, pursuant to HRS § 580-47, a family court has full

---

(. . . continued)

. . .

> (f) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of the hearing, the burdens imposed upon either party for the benefit of the children of the parties, the concealment of or failure to disclose income or an asset, or violation of a restraining order issued under section 580-10(a) or (b), if any, by either party, and all other circumstances of the case.

authority to be able to make attorney fee orders in divorce cases that are in fact just and equitable.

The Dissent incorporates its opinion in Cox and reiterates its position that HFCR Rule 68 can be interpreted in a manner consistent with HRS § 580-47. Based on reasons stated here and in Cox, we respectfully disagree. We reiterate that there is significant case precedent holding court rules inapplicable where they conflict with legislative mandates, see Cox, 138 Hawai'i at 482-83, 382 P.3d at 294-95, and we note that pending cases are governed by existing rules, even if rule amendments applicable to future cases can be made.[8]

This case involves an appeal of a family court order denying Husband's motion for HFCR Rule 68 fees. Husband brought the motion after the family court had already ordered Husband to pay Wife "just and equitable" attorney's fees pursuant to HRS § 580-47. Applying the existing language of HFCR Rule 68, the ICA vacated the family court's order denying Husband's motion, and ordered the family court to reconsider its ruling in light of that language. The conflict between the statute and the rule could not be more clear. We therefore vacate the ICA's ruling

---

[8] The Family Court Rules Committee is able to propose a revised version of HFCR Rule 68 that conforms with HRS § 580-47 and addresses the concerns expressed in Cox and in this case, including the presumptive entitlement to fees acknowledged by the Dissent, which conflicts with HRS § 580-47.

vacating the family court's denial of Husband's HFCR Rule 68 motion.

## V. Conclusion

For these reasons, the ICA's SDO and Judgment on Appeal with respect to Husband's cross-appeal is affirmed in part and vacated in part. The ICA's ruling vacating in part the family court's "Decree Granting Absolute Divorce and Awarding Child Custody" on the grounds it denied Husband any Category 3 credit for gifts and inheritance, is affirmed pursuant to the supplemental instructions in this opinion. The ICA's order vacating the family court's "Order Re: Plaintiff's Motion for Reconsideration and for Rule 68 Attorney's Fees Filed February 16, 2012" and "Order Denying Plaintiff's Motion for Reconsideration of Decision Announced March 14, 2012, Filed March 21, 2012" are affirmed based only on the issue of the Category 3 credits, but to the extent the ICA vacated these orders for the family court to address Husband's HFCR Rule 68 motion, the ICA's SDO and Judgment on Appeal are vacated. This matter is remanded to the family court for further proceedings consistent with this opinion.

| | |
|---|---|
| Peter Van Name Esser and P. Gregory Frey for petitioner | /s/ Sabrina S. McKenna /s/ Richard W. Pollack |
| Samuel P. King, Jr. for respondent | /s/ Michael D. Wilson |

